JACOB HACKENHEIMER et al., Respondents, *v.* LOUIS S. KURTZMANN et al., Appellants.

Contract — action for breach — when conclusion of material violation justified — liquidated damages — contract containing number of agreements, some of small importance — when sum named therein as liquidated damages for breach not a penalty — objection to evidence not raised at trial not considered by Court of Appeals — establishment of equitable cause of action — interest.

1. Where the son of the founder of a business which had been incorporated under the name of said founder, desiring to sell his stock, entered into a contract with other stockholders, in which his wife and son joined, whereby for a valuable consideration the husband and wife agreed that for a period of ten years and the son agreed that for a period of five years neither of them would use or authorize the use of their name in connection with the manufacture or sale of pianos or piano supplies or do anything tending to impair the good will of the business and it appears in an action to recover for breach of said contract that shortly before the expiration of the five-year period the son with two dummies organized a corporation bearing his name and in which he owned all of the stock and that after expiration of the five-year but before expiration of the ten-year period his father transacted business under the name of said corporation in the sale of pianos, the office of the corporation being his residence; that he obtained a trademark, issued advertisements and circulars and wrote letters damaging to the original corporation and that he destroyed all the correspondence, vouchers and bills evidencing his transactions, the conclusion is justified that he violated the material terms of said contract with the intent of injuring or destroying the good will of the original corporation and the value of its name.

2. Where the contract, which named a stated sum as liquidated damages for its breach, contained a number of agreements, some of less importance than others, but taking it as a whole including its recitals, it is clear that what was in the minds of the parties was the protection of the valuable good will inherent in the corporate name and that insignificant variations from the terms of the contract was not what they had in mind, the sum named may properly be treated as what the parties themselves said it was, liquidated damages. Nor is the use of the word " agreements " instead of " agreement " conclusive upon this question, this case being one where liquidated

damages are particularly suitable because in the nature of things it it impossible to fix those actually incurred. (*Seidlitz* v. *Auerbach*, 230 N. Y. 167, distinguished; *Brownold* v. *Rodbell*, 130 App. Div. 371, approved.)

3. The question whether an assignment of the interest of one of the parties could properly be made by his committee without an order of the court permitting it is not before this court where the assignment was offered in evidence and no such objection was then raised.

4. Nor can a contention that plaintiffs have failed to establish an equitable cause of action be maintained where it appears that at the time of its commencement the father was still bound by the agreement and relief is asked in damages and enjoining and restraining defendants from violating the agreement.

5. Interest was properly allowed from the date of the last violation of the agreement by which damages were incurred.

*Hackenheimer* v. *Kurtzmann*, 198 App. Div. 691, affirmed.

(Argued December 13, 1922; decided February 27, 1923.)

Appeal from a judgment, entered January 20, 1922, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term and directing judgment in favor of plaintiff.

*Simon Fleischmann* and *Martin Clark* for appellants. Plaintiffs failed to show themselves entitled to liquidated damages, or to any damages whatsoever. (Story's Eq. Juris. [14th ed.] § 1728; *Smith* v. *Newell*, 37 Fla. 147; *McPherson* v. *Robertson*, 82 Ala. 459; *Keck* v. *Bieber*, 148 Penn. St. 645; *Summit* v. *Morris Traction Co.*, 85 N. J. L. 193; *Basye* v. *Ambrose*, 28 Mo. 39; *Boulware* v. *Crohen*, 122 Mo. App. 571; *Lansing* v. *Dodd*, 45 N. J. L. 525; *Carter* v. *Strom*, 41 Minn. 522; *Lyman* v. *Babcock*, 40 Wis. 503.) The plaintiffs failed to establish a right of action in themselves. The agreement upon which plaintiff's cause of action is based is, as to the parties of the first part, the vendees, a joint contract. It is not as to them joint and several. To enforce such a contract, all

the parties seeking to enforce it must join in the action as parties plaintiff, and there is no several right of action. (1 Williston on Contracts, §§ 321, 322, 326; *U. S. Print. & Lith. Co.* v. *Powers*, 233 N. Y. 143; *Matter of Rose Co.*, 275 Fed. Rep. 409; *Matter of Application of Otis*, 101 N. Y. 580; *Pharis* v. *Geer*, 110 N. Y. 336; *Sporza* v. *German Savings Bank*, 192 N. Y. 8; *Penn. Steel Co.* v. *N. Y. City Ry. Co.*, 198 Fed. Rep. 721.) Plaintiffs have failed to establish an equitable cause of action. (*Jackson* v. *Strong*, 222 N. Y. 149; *Warnock Uniform Co.* v. *Garifalos*, 224 N. Y. 522; *Bauton* v. *Van Buren*, 229 N. Y. 17; *Stevens* v. *Mayor, etc.*, 84 N. Y. 296; *Green* v. *Stewart*, 19 App. Div. 201; *Toplitz* v. *Bauer*, 26 App. Div. 125; *Smith* v. *Johannsen*, 199 App. Div. 823; *Lewis* v. *Cocks*, 23 Wall. 466; *Donovan* v. *K. P. Corp.*, 181 App. Div. 737; *Singer Sewing Machine Co.* v. *Benedict*, 229 U. S. 481.) This action in its essential features is analogous to an action in equity against unfair competition, and, as such, is not maintainable. (*Meneely* v. *Meneely*, 62 N. Y. 427; *Cooke & Cobb Co.* v. *Miller*, 169 N. Y. 475; *Howe Scale Co.* v. *Wykcoff, Seamans, etc.*, 198 U. S. 118; *World's Dis. Med. Assn.* v. *Pierce*, 203 N. Y. 419; *Hotel Claridge* v. *Rector*, 164 App. Div. 185; *Schinasi* v. *Schinasi*, 169 App. Div. 185; *Von Bremen* v. *MacMonnies*, 200 N. Y. 41.) The Appellate Division erroneously allowed interest on the damages awarded by it to plaintiffs. (*Blackwell* v. *Finlay*, 233 N. Y. 361; *Faber* v. *City of New York*, 222 N. Y. 255.)

*Evan Hollister* and *L. L. Babcock* for respondents. The contract of December 5, 1911, clearly contemplated the payment of $50,000 as liquidated damages and not as a penalty in the event the defendants violated the terms of the contract. (Bigelow on Estoppel [6th ed.], 495; *Altman* v. *McMillan*, 115 App. Div. 239; *Metropolitan Life Ins. Co.* v. *Bender*, 124 N. Y. 47; *Nobles* v. *Bates*,

[235 N. Y. 57] Opinion, per ANDREWS, J. [Feb.,

7 Cow. 307; *Tode* v. *Gross*, 127 N. Y. 480; *Dunlop* v. *Gregory*, 10 N. Y. 241; *Dunn* v. *Morgenthau*, 73 App. Div. 149; *United States* v. *Bethlehem Steel Co.*, 205 U. S. 118; *Little* v. *Banks*, 85 N. Y. 258; *Clement* v. *Cash*, 21 N. Y. 253.) The plaintiffs established a right of action in themselves which was not questioned by defendants upon the trial. (*Cook* v. *Genesee M. Ins. Co.*, 8 How. Pr. 514; *Field* v. *Mayor, etc.*, 6 N. Y. 179.) Plaintiffs were entitled as a matter of right to interest upon the judgment for liquidated damage from the date of violation of the terms of the contract by which such damage was incurred. (*Gen. El. Co.* v. *Nat. Cont. Co.*, 178 N. Y. 369.)

ANDREWS, J. Some seventy-three years ago Christian Kurtzmann began the manufacture and sale of pianos in Buffalo. His business increased and the name of Kurtzmann became well and favorably known. He died in 1886. The business was thereafter carried on by a firm known as C. Kurtzmann & Co. In 1901 this firm was incorporated under the same name. The plaintiffs with one Irving E. Devereaux and the defendant Louis Kurtzmann, the son of the original Christian, owned all the stock. The business continued to increase and its good will, especially the name of Kurtzmann connected with it, had considerable value. The total capitalization of the corporation was $300,000 of which $65,000 was preferred stock. Of this Louis owned $41,000 of the preferred and $47,000 of the common stock. In 1911 for some reason he desired to sell this stock to the others. Thereupon a contract in writing was made between them. Evidently because of the value of the name Kurtzmann which might be used to the disadvantage of the corporation there were joined in this contract Anna S. Kurtzmann, the wife of Louis, and his son Christian. The contract, therefore, was between Jacob Hackenheimer and the other stockholders of the first part and Louis Kurtzmann, his wife Anna S., and his son Christian of

1923.] Opinion, per ANDREWS, J. [235 N. Y. 57]

the second part. It recited that the corporation was the successor of the partnership and had been well known to the trade for many years in connection with pianos, and that pianos manufactured by it had been known as the Kurtzmann piano. Large sums had been spent in advertising and the name Kurtzmann had become a valuable asset to the corporation. The parties of the first part are willing to purchase the stock " and to pay a price therefor which is based in large degree upon the good will of the business and its successful and continuous prosecution, and to that end desire to protect the name of the instrument manufactured by them so that it shall not be used to interfere in anywise with such business." Louis, his wife and son are anxious to have such sale effected. Therefore, the parties of the first part agreed to purchase the stock of Louis for $130,000 payable under conditions which have subsequently been complied with by them. In consideration of this payment " The parties of the second part other than Christian Kurtzmann severally and jointly agree with the parties of the first part and with such corporation that neither of them will during the period of ten years from the date hereof, and the said Christian Kurtzmann agrees that he will not within the period of five years from the date hereof, directly or indirectly interfere with the good will of the business of such corporation by the use of the name Kurtzmann in connection with the manufacture or sale of pianos and piano supplies; that they will not sell or give the right to any third person or corporation to use such name in connection with the manufacture or sale of pianos or piano supplies or musical instruments of any kind; that they will not do any other act or thing which shall tend to impair the good will of the business of such corporation or interfere with the conduct thereof, or with the mails of such corporation, or with the letters addressed to such corporation, or to Kurtzmann or the Kurtzmann Company,

mail for such corporation being frequently so addressed, and that if any such mail matter come into the possession of either of them it shall be immediately delivered to the company.

" They further agree that for the period aforesaid they will not, nor shall either of them, in any way disclose any information heretofore obtained by them touching the conduct of the business of such corporation, or seek to discredit its products, or any of them, or its methods of business or any of them, but will in good faith do what they may to preserve the good will and business of such corporation, and enable it to be successfully operated by its officers and directors without interference or hindrance upon their part or the part of either of them; and all statements furnished to them heretofore respecting the business of the corporation shall be returned to the corporation or to its counsel within five days from the execution of this agreement." Then to further protect the parties of the first part is this clause: " In case of breach of the agreements herein contained upon the part of the parties of the second part, or of either of such parties, then the parties of the first part shall be entitled to recover from the parties of the second part, all being held jointly and severally responsible therefor, the sum of fifty thousand dollars which is hereby stipulated as liquidated damages and not as a penalty; and they shall have the further right to enforce the terms of this agreement by due process of the law through a writ of injunction, or otherwise, as they may deem best." The five-year term during which Christian Kurtzmann was bound by the agreement would expire on December 5th, 1916. The ten-year period during which Louis and his wife Anna were bound would expire on the 5th day of December, 1921.

The Special Term found that neither Louis, Anna or Christian violated any of the provisons of this agreement. The Appellate Division, however, reversed these findings

and held that it was violated both by Louis and by Christian and directed judgment for $50,000 in favor of the plaintiffs. Neither court held that it was violated by Anna S., and plainly it was not. Even if it were not violated by Christian but was violated by Louis, under the language of the contract the same result would follow as that reached by the Appellate Division. We, therefore, confine ourselves to the acts of Louis.

The Appellate Division finds that on the 29th day of May, 1916, the defendant Christian with two dummies organized a corporation called Christian Kurtzmann, Incorporated, for the purpose of the purchase, manufacture and sale of pianos, organs and musical instruments. The capital stock of this corporation was $1,000. All of this stock was owned by the defendant Christian Kurtzmann. This corporation never elected any officers and held no corporate meetings after the first at which Christian was elected president. Some time during the year 1917 Christian Kurtzmann entered the United States army and was absent from Buffalo for about two years until the spring of 1919. During these two years Louis Kurtzmann did business under the name of the said corporation, representing himself to the banking institutions in which he kept his account, as its treasurer, although he had never been elected to such office. He transacted all the business of the corporation. During the years 1917, 1918 and 1919 he sold and delivered to various dealers in pianos in the United States at least ten of those instruments. He caused advertisements to be prepared and inserted in the newspapers which bore pictures of Christian Kurtzmann, the founder of the business, of Louis and of his son Christian which stated that the distinguishing characteristics of the Christian Kurtzmann piano were the finished touch of genius and pride coming down to the present organization through three generations of the Kurtzmann family who received their inspiration from that master builder and

pioneer Christian Kurtzmann; that the knowledge of the original Christian was incorporated in the Christian Kurtzmann, Incorporated, piano; that the lifelong association with his father enabled Louis to perfect the pianos and that the Christian Kurtzmann, Incorporated, piano was not to be confused with pianos of a similar name, for they were not the same and that " if the Kurtzmann family of piano builders built your piano the picture of the three generations " was upon it. Advertisements of this general nature were likewise put forth by the defendant Louis to various dealers. As a matter of fact Christian Kurtzmann, Incorporated, never built any pianos but what they had were obtained from other dealers. Circulars were prepared of a similar nature and sent by Louis Kurtzmann to prospective customers and to the trade generally. Louis Kurtzmann also wrote a letter or letters denouncing the conduct of C. Kurtzmann & Co. as dishonest and rotten. He further obtained the registration of a trade mark in the United States patent office, consisting of the three portraits above mentioned, and the legend " Three generations of the Kurtzmann family of piano builders." The office of the Christian Kurtzmann, Incorporated, was 41 Fordham drive, the private residence of the defendant Louis. These facts are not disputed. There are further findings that the organization of Christian Kurtzmann, Incorporated, was solely for the purpose of enabling the individual defendants to escape the obligations imposed upon them under the agreement of December 5th, 1911; that this corporation was used by Louis as an instrument behind which he could and did conceal his acts violative of the contract of December 5th, 1911; that it was directed solely and its operations controlled by the individual defendants Christian and Louis for the purpose of impairing and interfering with the value of the good will of C. Kurtzmann & Co.; that it was a mere agency or instrumentality by and through which the individual defendants Christian

and Louis were acting. And as a conclusion there is the finding that at divers times during the years 1916, 1917, 1918 and 1919 Louis violated the material terms of said contract of December 5th, 1911, hereinbefore set forth.

This conclusion is a fair inference drawn from the undisputed facts as found. The contract it seems was maliciously and willfully broken by Louis with the intent of injuring or destroying the value of the good will of the original corporation and the value of the name Kurtzmann for which he had received $130,000. Here was a corporation with a capital stock of $1,000 all belonging to Christian. The office of the corporation was the residence of Louis. For two years at least he carried on what business was done. He obtained a trade mark which clearly would be a great injury to the original corporation. He issued advertisements and circulars which could not fail to injure it. He wrote damaging letters. Finally, as has been found, he destroyed all the correspondence, vouchers and bills evidencing his transactions and representing his activities in Christian Kurtzmann, Incorporated, including everything pertaining to his personal transactions and the checks which he had used to pay for the advertisements which have been referred to so that it was difficult to trace his precise acts. The evidence is ample to justify the conclusion reached by the Appellate Division.

The other important question connected with the case is whether the $50,000 may be treated as liquidated damages or whether it is a penalty, notwithstanding the statement of the parties that it is the former. That depends upon the construction of the paragraphs which have been quoted. These paragraphs it will be remembered contain a number of agreements. Some are of less importance than others. For instance, the parties of the second part are to immediately return any mail matter directed to Kurtzmann or to the Kurtzmann Com-

pany which may come into their possession; they are not
to disclose any information touching the conduct of the
business or to discredit its products; they are to return
all statements furnished to them respecting the business'
within five days. If the breach of any one of these
obligations, no matter how trivial, involves the payment
of $50,000, then undoubtedly that sum must be treated
as a penalty. (*Seidlitz* v. *Auerbach*, 230 N. Y. 167.)
We do not think, however, that this is the intention of
the parties as disclosed by the contract or that such is a
fair interpretation to be given to it. Taking the contract
as a whole, including its recitals, it is clear that what
was in the minds of the parties was the protection of the
valuable good will inherent in the name Kurtzmann.
Because they could use this name was the reason that
the son and wife were made parties to the agreement.
The various stipulations all had this end in view. The
clause as to $50,000 had reference to this primary purpose.
Unless this was materially interfered with the $50,000 did
not become due. Some insignificant variation from the
terms of the contract, the retention of a letter for two days
instead of its immediate delivery to the company, or the
return to the corporation of statements on the 17th day
of December instead of the 16th was not what they had
in mind. Here, as has been found, there was such a mate-
rial violation. Such a construction was not possible in
*Seidlitz* v. *Auerbach*. There the contract contained a num-
ber of covenants, some of slight importance but " all and
every one of which the tenant covenants with the landlord
to keep and perform; " and the money was deposited " as
security for the faithful performance by the tenant of all the
covenants and agreements herein contained." The pres-
ent case is more analogous to that of *Brownold* v. *Rodbell*
(130 App. Div. 371). If, as we think, what the parties
intended was that the $50,000 should be liquidated
damages for a material interference with the good will
of the business, it may be treated as what the parties

themselves said it was, liquidated damages. *Seidlitz* v. *Auerbach* may be pressed to so extreme a conclusion as to make it impossible to draw any contract providing for such damages. Nor is the use of the word " agreements " instead of " agreement " conclusive upon this question. This kind of a case is one particularly where liquidated damages are suitable because in the nature of things it is impossible to fix those actually incurred. (*Tode* v. *Gross*, 127 N. Y. 480.)

It is claimed by the appellants that one Irving E. Devereaux was a party to this contract; that the assignment of his interest was made by Harriet M. Devereaux as the committee of his person and property and that no such assignment can be made unless there is an order of the court permitting it. That question is not before us. The assignment was offered in evidence and no such objection as is here made was then raised. Had it been the defect might have been supplied.

It is said also that the plaintiffs have failed to establish an equitable cause of action. This, we think, is not so. The action was commenced on December 1st, 1919, when Louis was still bound by the agreement. It asks for $50,000 damages and that the defendants and each of them be enjoined and restrained from violating the agreement.

Interest was allowed from the date of the last violation of the agreement by which damages were incurred. The appellants claim it should be allowed from the date of the entry of the judgment. There was no error in this result. Interest should be allowed from the time of the default. (*Faber* v. *City of New York*, 222 N. Y. 255.)

The judgment of the Appellate Division should be affirmed, with costs.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND, McLAUGHLIN and CRANE, JJ., concur.

Judgment affirmed, etc.