MEYER COHEN, as Treasurer of the Children's Clothing Workers Joint Board of Amalgamated Clothing Workers of America, Appellant, *v.* PHILIP M. BERKMAN, Doing Business under the Firm Name and Style of RENOWN NOVELTY CLOTHING COMPANY, Respondent.

Supreme Court, Appellate Term, First Department, November 10, 1927.

Damages — liquidated damages and penalties — defendant employer gave plaintiff union promissory note for $500 under agreement whereby note should be payable " as liquidated damages " to secure union for faithful performance of all covenants in agreement — union deemed to have waived restriction imposed on defendant — union cannot recover, for agreement provides for penalty notwithstanding fact that it specifically recites that note is for " liquidated damages "— complaint dismissed in absence of proof of actual damages — execution of agreement by defendant with union following strike against him deemed to be forfeiture of sum paid prior to strike — counterclaim for that amount not sustained.

Defendant gave plaintiff labor union his promissory note for $500 under an agreement whereby the note should be payable " as liquidated damages " to secure the union for the full and faithful performance by defendant of all covenants under the agreement. Upon default by defendant of any condition of the agreement the amount of the note became the property of the union. Plaintiff claims defendant violated a provision in the agreement, to the effect that he would not give out work to any person unless he had, in the first instance, the written approval of the union, by giving work to a shop which defendant claims he did not know was non-union. In view of the fact that the evidence discloses that not only does the agreement fail to prohibit the giving of work to a non-union shop, but that for over a period of years such written consent

was never requested or demanded, there was a clear waiver of one of the restrictions imposed on defendant.

Moreover, plaintiff cannot recover on the note for the reason that the agreement provides for a penalty, notwithstanding the fact that it specifically recites that the note is for " liquidated damages."

When a contract contains a number of covenants of different degrees of importance, and the loss resulting from the breach of some of them will be clearly disproportionate to the sum sought to be fixed as " liquidated damages," the sum so fixed must be regarded as a penalty.

Since the agreement herein contains, in addition to the one concerning work, numerous obligations to be performed by defendant for the breach of some of which damages can be ascertained as a matter of arithmetical calculation, a finding that the sum secured by the note is a penalty is proper.

Plaintiff's complaint must be dismissed in the absence of proof of actual damages.

Defendant's counterclaim for the $500 which he paid upon the execution of an agreement in 1924 is not sustained, since it appears that defendant waived any claim to the money when, following a strike against him, the union negotiated a new agreement the following year and the defendant actually consented to the forfeiture of the amount paid in 1924; the consideration for the forfeiture was the making of the 1925 agreement.

APPEAL by the plaintiff from a judgment of the Municipal Court, Borough of Manhattan, First District, in favor of the defendant.

*Goldberg & Solomon,* for the appellant.

*David M. Palley,* for the respondent.

Judgment affirmed, without costs, on the opinion of the court below; present, DELEHANTY, LYDON and CRAIN, JJ.

The following is the opinion of the Municipal Court:

SPIEGELBERG, J.   This is an action to recover the sum of $500 upon a promissory note dated July 29, 1925, made by the defendant to the order of the Amalgamated Clothing Workers of America (meaning the plaintiff herein), which was given under the following circumstances:  The plaintiff is an unincorporated association representing the children's clothing workers, and the defendant is a manufacturer of children's clothing.   On July 29, 1925, the parties entered into an agreement whereby the defendant agreed to comply with numerous rules laid down by the plaintiff, and as security for the compliance on his part of the conditions imposed upon him, gave the note in question.   It was agreed that the note should be payable " as liquidated damages to secure the union and its members for the full and faithful performance by the employer [meaning the defendant] of all the covenants, agreements and undertakings to be performed by the employer under this agreement, and for the full and faithful observance of all the restrictions assented to by him.   Upon any default by the employer of any

condition, term, covenant or undertaking under this agreement, the amount held by the Joint Board as liquidated damages shall forthwith become the property of the Joint Board." It is claimed that the defendant violated the 4th paragraph of the agreement, which provides, in substance, among other things, that he will not give out any work to any persons " unless he shall ·have first obtained the written approval therefor from the Joint Board." It appears that in September, 1925, it was ascertained that the defendant had sent out work to a contractor without having obtained the consent of the plaintiff. The testimony shows that the provision quoted was not enforced, and that, on the contrary, the defendant gave out work, without obtaining the written or oral consent, to such parties as he deemed proper. The plaintiff lays stress upon the fact that the firm to whom the work was given conducted a non-union shop. The defendant maintains that he did not know that that particular firm was not a member of the union. But, in my opinion, it is entirely immaterial whether that firm was, or was not, a union shop. The 4th paragraph of the agreement does not prohibit the giving out of the work to a non-union shop. It only states that the work should not be given out unless upon the written consent of the plaintiff. In all the dealings which the defendant had with the plaintiff association, covering a number of years, such written consent was never asked or demanded. We have, therefore, a clear waiver of one of the restrictions imposed upon the defendant. The plaintiff association may have had in mind that work to a non-union shop should be barred, but it did not state so. This omission is all the more significant in view of the fact that in the 1st paragraph of the agreement it is stated in unmistakable language that the employer shall only employ " employees who belong to and are members in good standing of the union or of any of its component local unions."

I am also of the opinion that the plaintiff cannot succeed for the reason that the agreement provides for a penalty. As stated in *City of New York* v. *Brooklyn & Manhattan Ferry Co.* (238 N. Y. 52, 56): " The tendency of the courts in doubtful cases is to favor the construction which makes the sum payable for breach of contract a penalty rather than liquidated damages, even where the parties have styled it liquidated damages rather than a penalty."

The agreement contains numerous obligations to be performed by the defendant, in addition to the one referred to under paragraph 4, such as that the defendant agrees to pay his employees their wages promptly every week; that he will abide by a minimum scale of wages; that there shall be an unemployment insurance

fund; that during the slack season the work shall be divided as nearly as practical among members of the union; that the defendant shall maintain sanitary conditions. There cannot be any doubt that the damages upon the breach of some of these conditions are readily ascertainable. In fact, upon the breach on which this action is based, it is a matter of arithmetical calculation to ascertain the damages. If the defendant gave out work to a firm within the ban of the agreement, the measure of damages is the amount paid to the non-union shop which otherwise would have been payable to a contractor acceptable to the union. It must be borne in mind that the plaintiff association represents its members. It is not a separate entity, such as a corporation. The vexed question how far the courts will recognize an agreement of the parties stipulating for liquidated damages instead of pronouncing the same a penalty, was finally settled by the Court of Appeals in the case of *Seidlitz* v. *Auerbach* (230 N. Y. 167). In that case the lease contained numerous covenants of varying importance, and for the breach of any of which the penalty attached. The damages fixed were likewise termed liquidated damages. As to some, of the covenants, the loss occasioned by the default of the defendant could be ascertained, and amounted to an insignificant sum. The court says (at p. 173): " Where a contract contains a number of covenants of different degrees of importance and the loss resulting from the breach of some of them will be clearly disproportionate to the sum sought to be fixed as liquidated damages, especially where the loss in some cases is readily ascertainable, the sum so fixed will be treated as a penalty. The strength of a chain is that of its weakest link." We have the same situation here. By virtue of the agreement, the sum of $500 is forfeited upon the breach of any one of the clauses of the agreement. It will not do for the plaintiff to claim that the particular covenant which was breached by the defendant is of vital importance. As said in the *Seidlitz Case* (*supra,* at p. 172): " A default does not mean a breach of all of them. Nor can it mean the breach of that one of them which may seem the most important." The plaintiff, however, maintains that the decision of this case should be governed by *Hackenheimer* v. *Kurtzmann* (235 N. Y. 57). There the court held that the contract as a whole was entered into for the protection of the valuable good will inherent in the name Kurtzmann. (See p. 66.) It distinguished the *Seidlitz* case by pointing out that in that case the contract contained a number of covenants, some of which were of slight importance, and that the money was deposited as security for the faithful performance of all the covenants and agreements therein contained. But that was exactly what happened in this

case. It is impossible to spell out one overshadowing covenant of such great importance as to make the others of negligible significance. In the *Hackenheimer* case the recitals of the agreement state what the object was. (See p. 66.) This is entirely lacking in this case. The court cannot determine what the dominant issue between the parties was. If it was for the protection of the members of the union, as claimed by the plaintiff, it would appear that the 1st paragraph, which specifically forbids the employment of non-union workingmen, is of far greater importance than the 4th paragraph. The *Hackenheimer* case, however, was distinguished in *City of New York* v. *Brooklyn & Manhattan Ferry Co. (supra).* The Court of Appeals, reversing the courts below, criticized the theory adopted by them that the paramount consideration of the bond was the agreement of the ferry company to operate the ferries for the full term of the lease, and that liquidated damages was suitable because it was impossible to fix the damages actually incurred. (pp. 56, 57.) The court declined to follow the *Kurtzmann* case upon the ground that in the case before it the bond was given to guarantee the continuance of the ferry service both for the term and in accordance with the conditions of the lease, particularly the condition for payment of the stipulated rent; and it added very significantly: " It cannot be said that either the operation for the term or the operation in accordance with the other provisions of the lease is the paramount consideration." And likewise in this case it cannot be spelled out from the agreement what the paramount consideration was. I, therefore, hold that, in the absence of proof of actual damages, the plaintiff's complaint must fall.

The defendant sets up a counterclaim for the sum of $500 which he paid upon the signing of an agreement in July, 1924. That agreement, with the exception of the date and the terms of payment, was identical with the 1925 agreement. It appears that prior to the expiration of the 1924 agreement the plaintiff called a strike against the defendant upon the alleged ground that he had violated the terms of the agreement. After the strike had lasted for some time, negotiations between the parties took place which resulted in the making of another agreement, being the one of July 29, 1925. The defendant claims that he is entitled to recover back the $500 which he paid in July, 1924, upon the contention that such payment was a penalty. I am persuaded, however, from the evidence in this case that the defendant waived any claim that he may have had and consented to the forfeiture of the amount paid by him in 1924. The consideration for such forfeiture consisted in the making of the new agreement of July 29, 1925. I do not believe, as claimed by the defendant, that at the time of

making the new agreement he demanded, and the plaintiff promised, the return of the money. It is only necessary to show the improbability of the defendant's version by pointing out that upon the signing of the new agreement he gave the note for $500, when the plaintiff association had in its possession $500 in cash, which he claims was promised to be returned to him. If the defendant's testimony were true, the parties would have agreed to let the $500 given as security under the old agreement stand as security for the new agreement.

In the view that I have taken of this case, the plaintiff's complaint must be dismissed on the merits, and the defendant's counterclaim must be dismissed on the merits.