**Susan BRECHER et al., Plaintiffs,**

v.

**Lawrence LAIKIN, Defendant.**

**No. 75 Civ. 2596 (GLG).**

United States District Court,
S. D. New York.

March 25, 1977.

Tenzer, Greenblatt, Fallon & Kaplan, New York City, for plaintiffs by Edward L. Sadowsky, Steven A. Herman, New York City, of counsel.

Kreindler & Kreindler, New York City, for defendant by Paul M. Bernstein, Ed-

ward A. Grossman, New York City, of counsel.

## OPINION

GOETTEL, District Judge.

Plaintiffs are Executors under the Will of Morris Brecher. Prior to his death, Brecher was a real estate operator. He was associated with the defendant Laikin, who was in effect his junior partner. The pair had a falling out and agreed to separate their business interests. A New Jersey property was turned over to Laikin as part of the distribution of their joint assets. Since Laikin did not have the credit standing of Brecher, it was a part of their agreement that Brecher would assist in obtaining continued financing for the property.

At the time of the agreement, there were four loans secured by the property. Two of these were in the form of second mortgages, the third was a demand note, and the fourth was an amortized loan in the amount of $100,000. Brecher was to negotiate the renewal of the obligations, at specified rates of interest, but the responsibility for payment would remain with Laikin. Consequently, Brecher's major obligation was to lend his credit standing to the obtaining of the renewals and to pay any difference between the interest rate actually obtained and that provided for.

Certain disputes arose between the parties which resulted in litigation. In settlement of the litigation, an agreement was entered into between them. Since Laikin, at that point, mistrusted Brecher, and wanted to avoid further litigation, he insisted that a liquidated damage provision be inserted in the settlement agreement providing for maximum liquidated damages of $130,000, which sum was secured by Brecher's promissory note in that amount. This figure was arrived at by the parties taking into account the maximum difference, for each of the loans, between the rate that Brecher was required to obtain upon renewal and the maximum amount of interest it was thought Laikin's corporations might have to pay. A different calculation was made with respect to each loan and the amount attributed to the fourth (amortized) loan was $16,336. The total figure for the four loans was then rounded off at $130,000.

The mechanics of effecting the liquidated damage provision were that, if there was a material breach as to any of the obligations on any of the loans (some loans required more than one renewal), Brecher was to be given credit for those transactions already performed, this sum was to be deducted from the $130,000 liquidated damages secured by the note, the remainder would then be paid to Laikin, and Brecher would be excused from any further performance.

In preparing the settlement agreement, the lawyers took no special cognizance of the fact that one note was amortized and that it did not have a single "due date." The agreement, therefore, merely spoke of Brecher renewing the notes "when due."

After Brecher's death, before the date of the last payment on the amortized note, Brecher's Executors refused to renew that obligation, although this was demanded by Laikin, contending that it was not "due" and, indeed, was completely discharged. They went to court seeking a declaration that they had no obligation to renew that note and seeking to enjoin a collection from the promissory note given to secure the liquidated damage provision. A New York State court, prior to the removal of this action, enjoined defendant Laikin from declaring a forfeiture and negotiating the promissory note. In granting the injunction, the Court did not consider the merits of the action or whether the entire sum of liquidated damages could be collected because of the failure to renew the amortized note.

After the institution of the litigation, Brecher's estate carried out his obligations with respect to the other three loans in all respects.

Following removal to this court and an unsuccessful summary judgment motion (see Memorandum Opinion of October 14, 1976), a bench trial was held. At trial, Laikin had testified that had he had the

$100,000 proceeds from a renewal of the amortized loan he would have used it for a new venture on which he might have realized a substantial profit. Since, however, the note was not renewed by Brecher's estate (and he did not renew it on his own), the exact amount of profits that he might have lost because of the breach could not be calculated.

At the conclusion of the trial, the Court determined that the Executors' construction of the agreement (i. e., that there was no obligation to renew the $100,000 amortized note) was incorrect and found that there had been a material breach of the agreement. Other Findings of Fact and Conclusions of Law were entered, including the conclusion that the liquidated damage provision was reasonable and enforceable for a total breach. The only issue left open for disposition concerned the question of damages, the plaintiff contending that to award the liquidated damage figure would be unreasonable and amount to a penalty, and the defendant arguing that there had been a material breach and that the entire liquidated damage figure had been agreed upon and should be awarded.

■■■ Liquidated damage provisions have had a checkered history. While the freedom of parties to structure their agreement is universally acknowledged to be at the heart of the law of contract, 1 Corbin, *Contracts* § 1 (1963), the limited enforcement of clauses where parties have agreed to specified measures of damages is a judicial check on the freedom of contract based on public policy notions of the courts of equity. 5 Corbin, *Contracts* § 1055 (1964). As a general test, if a contested clause providing for definite preagreed damages is intended by the parties to operate in lieu of performance, it will be deemed a liquidated damages clause and may be enforced by the courts. *Joy Vending Co. v. S & A Luncheonette & Restaurant, Inc.,* 15 Misc.2d 565, 180 N.Y.S.2d 194 (1958). If such a clause is intended to operate as a means to compel performance, it will be deemed a penalty and will not be enforced. 5 Williston, *Contracts* § 776 (3d Ed. 1961). If a contract

with many terms of varying degrees of importance provides that the liquidated damage clause will be enforceable for any breach of the contract, serious or trivial, the liquidated damages clause will be viewed as a penalty and, as such, be unenforceable as to any breach. *Seidlitz v. Auerbach,* 230 N.Y. 167, 129 N.E. 461 (1920). On the other hand, if a liquidated damages clause is general in a contract with several clauses of varying importance, the clause will be held applicable only to material breaches and enforceable only as to such breaches. *Hackenheimer v. Kurtzmann,* 235 N.Y. 57, 138 N.E. 735 (1923). Where the court has sustained a liquidated damages clause the measure of damages for a breach will be the sum in the clause, no more, no less. *Atterbury v. Bank of Washington Heights,* 211 App.Div. 90, 206 N.Y.S. 647 (1924); *Learned v. Holbrook,* 87 Or. 576, 170 P. 530 (1918). If the clause is rejected as being a penalty, the recovery is limited to actual damages proven. *Seidlitz v. Auerbach, supra.*

■■ New York law permits the use of liquidated damages clauses in contracts. *See, e. g.,* N.Y.U.C.C. § 2–718 (McKinney's 1964); 14 N.Y. Jur., Damages § 155. A party seeking to enforce a liquidated damages clause must meet two tests. First, at the time the contract was entered into, the anticipated damages in the event of a breach must be incapable of, or very difficult of, accurate estimation. *Barnette v. Sayers,* 53 App.D.C. 169, 289 F. 567 (1923); *Cotheal v. Talmage,* 9 N.Y. (5 Seld) 551 (1854). Second, the amount of the damages specified in the liquidated damages clause must not be disproportionate to the damage reasonably anticipated for the breach as of the time the contract was made. *Dunn v. Morgenthau,* 73 App.Div. 147, 76 N.Y.S. 827 (1902), aff'd 175 N.Y. 518, 67 N.E. 1081 (1903). These issues are questions of law for the court. *Mosler Safe Co. v. Maiden Lane Safe Deposit Co.,* 199 N.Y. 479, 93 N.E. 81 (1910).

■ In this case, the parties clearly intended the liquidated damages clause to operate as a substitute for performance in

the case of a total breach by the decedent. The damage to the defendant because of the failure of plaintiffs to renew any of the loans after plaintiffs' testator's death would have been difficult to accurately evaluate and the agreed upon figure for the liquidated damage clause was a reasonably reached estimate at the time of contracting. The Court concludes, however, that the parties did not intend the liquidated damage clause to operate for the breach of the obligation to secure renewal of the amortized loan alone. Under *Seidlitz* and *Hackenheimer* such a partial failure of performance would, if the liquidated damage clause was called into operation, render it a penalty and, therefore, unenforceable. This conclusion would be based upon the fact that, at the time of the contract, the total sum in the damage clause was not reasonably related to the parties' estimate of the potential harm of such a partial breach. Indeed, the parties never envisioned the situation that came to pass after Brecher's death: partial performance, then a total breach of a lesser divisible obligation, followed by complete performance on the other three loans. Had Brecher lived, they anticipated either total performance or a forfeiture and no further performance following any material breach.

The Court has considered an apportionment of the total liquidated damage clause so as to allow partial recovery for a breach of one of four separate obligations. Had the plaintiffs failed to renew one of the demand notes due, and had the total liquidated damage clause made specific reference to the component elements for each underlying obligation, such an apportionment might be the proper, albeit somewhat novel, remedy. In this case, however, lacking any legal authority for apportionment of a unitary liquidated damage figure, defendant must demonstrate his actual damage in order to recover for the breach.

Both sides have presented evidence as to the negotiations and computations in preparing the liquidated damage clause. Defendant has argued that the failure of the plaintiffs to secure a new amortized loan for him had caused him to lose an opportunity to pursue a large commercial real estate venture. However, the defendant's efforts as to this prospective endeavor were so preliminary that, in the absence of the loan, no project was ever undertaken. In this context, the opportunity lost by defendant is too speculative to support a damage award. Nevertheless, the original parties to the contract were able to agree upon a relatively accurate measure of the value of the amortized loan by making an excess interest computation. This computation provided that the reasonable estimate of the loss occasioned by a failure to renew the amortized loan would be $16,336. In the absence of contradictory proof, this agreement between the parties, both active entrepreneurs in the same business, is sufficiently explicit to sustain a finding of actual damages of $16,336 in favor of defendant. Although no proof was offered on the point, it would seem that approximately the same damage figure would be arrived at if the plaintiffs were credited with the value of the actions performed both prior to, and after, the failure to renew the fourth loan and this amount was subtracted from $130,-000. Consequently, damages of $16,336 are awarded to defendant.

SO ORDERED.