UNITED AIR LINES, INC.,
Plaintiff–Appellee,

v.

AUSTIN TRAVEL CORPORATION,
Larry Austin, Jeffrey Austin,
Defendants,

Appeal of AUSTIN TRAVEL CORPORA-
TION, Defendant–Appellant.

No. 166, Docket 88–7474.

United States Court of Appeals,
Second Circuit.

Argued Oct. 31, 1988.

Decided Feb. 1, 1989.

David Boies (Cravath, Swaine & Moore, New York City, William F. Duker, David A. Barrett, Richard L. Crisona, Cliff B. Chenfeld, Duker & Barrett, New York City, of counsel), for defendant-appellant.

S. William Livingston, Jr., Roberts B. Owen, Carolyn F. Corwin (Covington & Burling, Washington, D.C., of counsel), for plaintiff-appellee.

Don M. Adams, Douglas L. Abramson, John J. Varley (Delta Air Lines, Inc., Atlan-

ta, Ga.), filed a brief for amicus curiae Delta Air Lines, Inc.

Before WINTER and MINER, Circuit Judges, and MUNSON, District Judge.*

MINER, Circuit Judge:

Defendant–appellant Austin Travel Corp. ("Austin") appeals from a summary judgment entered in the United States District Court for the Southern District of New York (Pollack, J.) awarding plaintiff-appellee United Air Lines, Inc. ("United") $408,375 in liquidated damages and unpaid debt plus interest and costs. United sued Austin to recover (i) damages for breach of leases obligating Austin to use a United computerized reservation system ("CRS") called Apollo and a United business and accounting system known as Apollo Business System ("ABS"), and (ii) unpaid accrued rentals. Austin claimed that the liquidated damages clauses of its Apollo contracts with United were unreasonable and unenforceable and that United's CRS practices violated federal and New York State antitrust laws.

The district court held that the liquidated damages clauses were reasonable and enforceable and that Austin could not prevail on claims of monopolization, attempted monopolization, restraint of trade and price discrimination. 681 F.Supp. 176 (S.D.N.Y. 1988). On appeal, Austin reasserts its liquidated damages and antitrust claims. Because we hold that the liquidated damages provisions of the United–Austin contracts were at the time of execution a reasonable forecast of damages in case of breach and because there was no showing at the district court of any antitrust violation by United, we affirm the entry of summary judgment in United's favor.

## BACKGROUND

United owns and markets to travel agents and others the Apollo CRS. A CRS provides subscribers access to a vast data bank through which they may make airline reservations, issue tickets, reserve car rentals and hotel rooms and perform other travel-related functions. By licensing this system, United earns income in two ways: First, the travel agent pays United a monthly subscription fee, either fixed or based on use, and second, each time the travel agent uses Apollo to book a flight on an airline other than United, United charges that airline a booking fee. United flights booked through Apollo do not generate booking fees. United's Apollo contracts require an agent to book a minimum of 50% of that agent's average monthly bookings through Apollo. United also markets its ABS, a back-office accounting and management system for travel agents.

Competing nationwide with Apollo are four other CRS systems, SystemOne, PARS, DATAS II and SABRE, each owned by separate air carriers. SABRE, owned by American Airlines, is used as a principal CRS by approximately 28% of the more than 28,000 travel agency locations across the country. SABRE also holds the largest share of CRS transactions nationally, more than 45% in the years 1983–1985. Nationally, Apollo is the second largest CRS, used by approximately 25% of travel agency locations in the United States, and, according to Austin, accounting for 31% of all CRS transactions in this country. On Long Island, New York, Apollo ranks fourth, used by 3% of Long Island travel agency locations and earning 8% of all Long Island CRS revenues.

Austin is a travel agency with thirteen offices on Long Island. Prior to mid–1985, Austin used a variety of CRSs, but it never used Apollo. In 1985, Austin acquired two smaller Long Island agencies, Karson Travel and Fantasy Adventures, both of which subscribed to Apollo. By separate agreements with United, Austin assumed Karson's ABS contract and Fantasy's Apollo contract. Austin then executed a five-year Apollo contract covering two of its other locations in Oceanside and Mitchell Field.

---

* Hon. Howard G. Munson, United States District Judge for the Northern District of New York, sitting by designation.

Each of the Apollo contracts that Austin signed provided for payment of liquidated damages upon premature termination of the contract. In the contract for the Oceanside and Mitchell Field locations, the liquidated damages consist of: (i) 80% of the remaining monthly fees due under the contract, (ii) 80% of variable charges, accrued by generation of tickets and itineraries, for the month preceding termination, multiplied by the number of months remaining in the contract term and (iii) 50% of the average monthly booking fee revenues, using the first six months of the contract as a basis for calculation, multiplied by the number of months remaining in the contract term. In the contract assuming Fantasy's Apollo obligation, only the first two elements are used to define liquidated damages. The contracts specify that Illinois law governs disputes; for the contract issues raised by this case, the law of Illinois is the same as that of New York, the state where the claim arose, and virtually all other states.

Austin then moved the SABRE CRS into its three locations covered by Apollo, using the two systems side by side at each location. Austin later notified United that it wished to discontinue use of the ABS system at the Karson Travel location. United agreed to the discontinuance and to forego the $90,511.43 in liquidated damages Austin owed under the Karson ABS agreement provided that Austin continue to use Apollo until November 30, 1989. Austin accepted the condition and discontinued use of ABS.

Thereafter, representatives of the rival SystemOne CRS, owned and operated by Texas Air Corp., offered Austin indemnity against any damages incurred for breach of the existing Apollo agreements if Austin would contract for use of SystemOne. In June 1986, Austin adopted the SystemOne CRS at Mitchell Field, its principal Apollo location, and abandoned all of its Apollo obligations before the expiration of the term of the contracts. At Austin's request, United removed all Apollo equipment from Austin premises. Austin had never paid United for the use of Apollo equipment and services provided by the contracts.

United brought this breach of contract action on the two Apollo contracts and the ABS agreement. Austin defended and counterclaimed on two grounds relevant to this appeal: first, that the liquidated damages clauses included in the Apollo contracts were unenforceable penalties; and second, that United's actions violated federal antitrust laws—namely, sections 1 and 2 of the Sherman Act and sections 2 and 3 of the Clayton Act, as amended by the Robinson–Patman Act—and New York antitrust law. After United moved for summary judgment, the district court held an evidentiary hearing pursuant to Fed.R.Civ.P. 43(e), because of the difficulty it cited in excavating for pertinent facts among the mountains of documents submitted by Austin in opposition to the motion.

The district court rejected Austin's defenses and counterclaims. It held that the liquidated damages clauses were reasonable and enforceable. As to the antitrust defenses and counterclaims, the district court found no monopolization, because United did not have a dominant position in the relevant geographical market of Long Island, or elsewhere. As well, the court could discern no attempt by United to monopolize, partly because Austin's expert conceded that there was no reasonable or realistic possibility that United could achieve a monopoly in the New York City/Long Island area. The court further found that United simply lacked market power and that there had been no showing of either unreasonable restraint of competition or of exclusive dealing. Finally, the court rejected Austin's counterclaim of price discrimination because there was no evidence of a possibility of injury to competition.

On appeal, Austin argues that the district court erred by enforcing liquidated damages that are penalties, improperly defined the relevant market for antitrust purposes as Long Island and abused summary judgment standards by deciding in plaintiff's favor issues of fact that should have been submitted to a jury.

## DISCUSSION

### A. *Liquidated Damages*

 It is commonplace for contracting parties to determine in advance the amount of compensation due in case of a breach of contract. 5 *Corbin on Contracts* § 1054, at 319 (1964). A liquidated damages clause generally will be upheld by a court, unless the liquidated amount is a penalty because it is plainly or grossly disproportionate to the probable loss anticipated when the contract was executed. *Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1289–90 (7th Cir.1985) (applying Illinois law); *Truck Rent–A–Center, Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 424, 361 N.E.2d 1015, 1018, 393 N.Y.S.2d 365, 369 (1977). Liquidated damages are not penalties if they bear a "reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation." *Leasing Service Corp. v. Justice*, 673 F.2d 70, 73 (2d Cir.1982).

 The liquidated damages fixed in the Apollo contracts [1] were, as the district court found, reasonable at the time the contracts were executed. Most of United's costs when providing Apollo service are either fixed or determined in the early stages of the contractual relationship. The few costs that United would avoid by an early termination of an Apollo contract are estimated to be "less than 20 percent of the amount of revenue from the monthly fixed usage fees and variable charges." 681 F.Supp. at 187 (emphasis omitted). The Apollo contracts' liquidated damages clauses provide for recovery by United of only 80% of the fixed and variable charges. Austin is thus provided with better than adequate credit for the costs United is able to avoid by the early removal of the Apollo CRSs from Austin premises.

Austin complains that the 20% discount incorporated by the liquidated damages provisions underestimates the savings realized by United in the event of early contract termination. Austin points to testimony by a representative of a competing CRS vendor that United's avoidable costs likely equal 40% to 50% of United's total costs. The testimony of a competitor about United's costs and savings is inherently suspect, and United presented sufficient evidence to justify the 20% figure. The appropriate analysis is not whether a better quantification of damages could have been drafted by the contracting parties, but whether the amount of liquidated damages actually inserted in the contract is reasonable. "[T]he disputable analysis of presumed costs savings belatedly submitted by Austin does not discredit the reasonableness of United's anticipatory estimate in light of anticipated or actual loss caused by the breach and the difficulties of proof." 681 F.Supp. at 188. We note as well, as the district court did, that CRS contracts of United's competitors often call for 100% of rent due on the unexpired term of the contract; United obligated Austin for only 80%. There is no indication that the estimate of probable loss, identified in the contracts as liquidated damages, is either unfair or unreasonable. Indeed, the liquidated damages provisions edge closer toward over-

---

**1.** The Apollo Subscriber Lease Agreement between United and Austin for the Oceanside and Mitchell Field locations includes the following paragraphs:

　12.　TERMINATION FOR CAUSE
　　　*　　*　　*　　*　　*　　*
　　If either party (the "Defaulting Party") shall refuse, neglect, or fail to perform, observe or keep any of the covenants, agreements, terms or conditions contained herein on its part to be performed, observed and kept, and such refusal, neglect or failure shall continue for a period of thirty (30) days after written notice (except in the case of any payments due where the period to cause such nonpayment shall be five (5) days after notice) to the Defaulting Party thereof, then without prejudice to any other rights or remedies of the other party, this Agreement shall terminate at the expiration of the notice period.
　　　*　　*　　*　　*　　*　　*
　21.　LIQUIDATED DAMAGES
　　In the event that prior to the expiration of the term of this Agreement, as specified in Article 11 ..., this Agreement is terminated by Subscriber, except pursuant to Article 12, or by United pursuant to the provisions of this Agreement, then Subscriber will pay to United liquidated damages....
The other contract at issue contains substantially the same language.

generousness to Austin than they do toward unreasonableness.

Austin complains that in the disputed contract covering its Oceanside and Mitchell Field locations the liquidated damages formula, which envisions repayment for all potential booking fees, fails to account for the fact that United does not receive booking fees for United flights booked on the Apollo CRS. The booking fees reimbursement, however, is based on a lenient minimum usage level of Apollo—future monthly bookings are estimated as 50% of the average level of all bookings Austin made on Apollo in the early months of the contract. Any unfairness suggested by a failure to exclude United bookings from the liquidated damages formula is negated by the low level of Apollo usage employed for estimation of future bookings.

Austin further depicts the liquidated damages clauses as imposing penalties because they provide the same amount of damages for each possible breach of the contract, no matter how insignificant. Austin argues that establishing a single liquidated damages amount for any breach indicates that a fair estimation of probable loss for each breach was not conceived when the contract was drafted and executed.

Austin, however, ignores basic tenets of contract law. "A party may terminate a contract only because of substantial nonperformance by the other party so fundamental 'as to defeat the objects of the parties in making the agreement.'" *Maywood Sportservice, Inc. v. Maywood Park Trotting Ass'n, Inc.*, 14 Ill.App.3d 141, 302 N.E.2d 79, 84 (1973) (*quoting Wright v. Douglas Furniture Corp.*, 98 Ill.App.2d 137, 143, 240 N.E.2d 259, 262 (1968)); *see John F. Trainor Co. v. G. Amsinck & Co.*, 236 N.Y. 392, 394, 140 N.E. 931, 931 (1923). Neither United nor Austin can terminate the contracts because of a non-material breach. Thus, liquidated damages can only be owed to United in the event of a material breach by Austin.

Furthermore, the presumed intent of the parties is that a liquidated damages provision will apply only to material breaches. *Hackenheimer v. Kurtzmann*, 235 N.Y. 57, 66, 138 N.E. 735, 738–39 (1923). Additionally, for a non-material breach to allow an aggrieved party to abrogate the contract, it must be explicitly stated in the agreement of the parties. *See Seidlitz v. Auerbach*, 230 N.Y. 167, 129 N.E. 461 (1920) (liquidated damages clause applies to trivial breaches because contract stated as to its many obligations that "all and every one of which the tenant covenants to keep and perform"); *Hackenheimer*, 235 N.Y. at 66–67, 138 N.E. at 739 (warning not to extend *Seidlitz* to an extreme conclusion for fear of rendering liquidated damages impossible to draft); *Brecher v. Laikin*, 430 F.Supp. 103, 106 (S.D.N.Y.1977) (according to New York law, liquidated damages clause can only apply to material breaches); *see also Restatement (Second) of Contracts* § 237 comment a (1981).

We are not persuaded that the liquidated damages outlined in the Apollo contracts were meant to apply to trivial breaches. Article 12 of the Lease Agreement states in unexceptional language that liquidated damages are to be awarded for a failure of "any of the covenants, agreements, terms or conditions." We take this language to refer to material breach. Absent a more explicit demonstration of intent to apply the termination provisions to trivial breaches, the liquidated damages clauses must be enforced.[2]

The parties to the contracts negotiated at arms length and without misinformation. Since summary judgment is rendered appropriately when there exists no genuine issue as to any material fact, Fed.R.Civ.P. 56(c), the district court was correct to enforce the liquidated damages clauses by summary judgment. *See Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir.1984).

**2.** Professor Corbin writes that in a case where the liquidated damages specified in the contract are a reasonable estimate of the injury actually caused, but would not have been so for injuries caused by other possible breaches, and the extent of the injury is difficult to estimate, the liquidated damages clause should be enforced. 5 *Corbin on Contracts* § 1066, at 383–84.

## B. *Antitrust Claims*

The standard for summary judgment applies equally to antitrust cases as to any other case. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1354–56, 89 L.Ed.2d 538 (1986). Austin asserts four ostensible errors in the district court's treatment of Austin's antitrust claims. We find no error in the district court's analysis.

First, Austin claims the district court erred by concluding that the Long Island market was the relevant market when it determined that United had not achieved monopoly power in the CRS industry. Austin proffers a national market as more appropriate, despite having considered Long Island as a relevant market in its earlier counterclaim. Failing that, Austin suggests "interrelated regional and local markets," which it defines ambiguously as "involv[ing] consideration of the complex relationship between the travel agency and air transportation industries in numerous interrelated geographic regions and city-pair submarkets."

We do not accept Austin's suggestions. Not only does United lack market power in Long Island, where it presently controls less than 10% of the CRS market, but, even adopting Austin's contention that United controls 31% of the national market, it lacks the market power necessary to constitute a national monopoly. *See Nifty Foods Corp. v. Great Atl. & Pac. Tea Co.*, 614 F.2d 832, 841 (2d Cir.1980); *United States v. Aluminum Co. of America*, 148 F.2d 416, 424 (2d Cir.1945) (33% of relevant market is "certainly" not a monopoly). Furthermore, the district court held that the evidence presented could not support a finding of United monopoly power either on Long Island or elsewhere. 681 F.Supp. at 182. Whatever conception of the CRS market Austin urges, evidence in the record does not support Austin's claims that Unit-

ed attained the threshold market share necessary for the antitrust violations asserted. The district court also considered other markets that Austin asserted United monopolized—i.e. a "convention" market and an "airline access to travel agents" market —and properly dismissed them as illusory. 681 F.Supp. at 185.

Second, Austin argues that United is guilty of *de facto* exclusive dealing. Austin contends that United foreclosed competition in Long Island by drafting its Apollo contracts to require a minimum usage of 50% of CRS bookings. It argues that the court should have inferred this from the data it furnished regarding "nationwide" effects of minimum use provisions in CRS contracts. Austin cites as further support testimony of certain Apollo agents outside of Long Island who were reluctant to take on another CRS. We reject this argument. The provisions in the Apollo contracts state that the agreements are non-exclusive and that the subscriber is free to use any other CRS. There is no indication that these terms were defeated by United's Long Island practices. The evidence of United activities in areas other than Long Island require more than mere inference to apply to United's Long Island practices. Austin has provided no evidence that it has been or could have been foreclosed from operating a CRS other than Apollo. In fact, at two locations, Austin introduced the SABRE CRS to be used alongside Apollo. The district court was justified in finding that United's practices did not "deter agents or make it impossible for them to fulfill contracts with other vendors or deter[ ] Austin from switching CRS vendors," 681 F.Supp. at 184.

Third, Austin objects to the district court's refusal to consider certain government reports about the CRS industry.[3] The Supreme Court has held that opinions and reports by government agencies may be admitted as evidence pursuant to Fed.R.

---

3. These reports include: a 1987 House of Representatives committee report with eleven dissenters; *see* House Comm. on Public Works and Transportation, Airline Passenger Protection Act of 1987, H.R.Rep. No. 293, 100th Cong., 1st Sess. 8–12 (1987); a General Accounting Office review of the CRS industry that failed to interview officials of key CRS users and did not verify

some pertinent data, *see* General Accounting Office, *Airline Competition Impact of Computerized Reservation System* 4 (May 1986); a Civil Aeronautics Board Final Rule adopting CRS rule changes that in some ways supports United's rather than Austin's, claims, *see* 49 Fed.Reg. 32540, 32544 (Aug. 15, 1984) ("in many respects the market for CRS services is regional in na-

Evid. 803(8)(C) if they are trustworthy and based on factual investigations. *Beech Aircraft Corp. v. Rainey,* —— U.S. ——, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988). During the Rule 43(e) hearing the district court made it clear that it considered the government reports in this area untrustworthy because they do not reflect real concerns of the business world. Considering as well the interim or inconclusive nature of the reports Austin sought to introduce, the court was entirely within its discretion when it refused to consider them.

Finally, Austin contends that the district court usurped the functions of a trial by resolving disputed issues of fact and judging the credibility of witnesses at a Rule 43(e) hearing. At the Rule 43(e) hearing, however, the court determined only whether there were issues of fact to be tried. Appropriately, the district court found that no probative evidence was introduced to buttress Austin's many claims. There were no issues for trial.

## CONCLUSION

The judgment of the district court is hereby affirmed.

ture"); and a 1985 Department of Justice report lacking in sufficient finality to be authoritative, *see* Justice Department, Comments and Proposed Rules of the Department of Justice, *Advance Notice of Proposed Rulemaking—Airline Computer Reservation Systems* (Nov. 17, 1983) (noting, among other things, the desirability of liquidated damages clauses in CRS contracts, *id.* at 57).