**REPUBLIC AIRLINES, INC., Appellant,**

v.

**UNITED AIR LINES, INC.**

No. 85–5887.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 20, 1986.

Decided July 29, 1986.

Charles J. Simpson, Jr., with whom Frank J. Costello, Washington, D.C., was on brief, for appellant.

Stephen P. Sawyer, with whom Bobby R. Burchfield, Washington, D.C., was on brief, for appellee.

Before BORK and SCALIA, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge SCALIA.

SCALIA, Circuit Judge:

In this diversity action, Republic Airlines, Inc., seeks to recover damages from United Air Lines, Inc., for an alleged breach of contract. The principal question presented is whether federal regulations promulgated subsequent to formation of the contract rendered it unenforceable as a matter of federal law.

## I

Many air travel agencies obtain flight information from and make reservations through one of a number of computerized reservation systems ("CRSs") owned and operated by various airlines. A typical CRS consists of a network of display terminals linked to a central data base containing flight information not only for the operator airline but also for other airlines that have contracted with the operator airline to be included.

In 1983, the Civil Aeronautics Board ("CAB") issued an Advance Notice of Proposed Rulemaking to address alleged competitive abuses by CRS operators. *Computer Reservations Systems; Alleged Competitive Abuses and Consumer Injury,* 48 FED. REG. 41,171 (1983). The two alleged abuses relevant to this case are "display bias," the structuring of CRSs so that flights appear on travel-agency display terminals in an order determined not solely on the basis of service-related factors (*e.g.,* time of departure and arrival, or directness of connections), but also on the basis of airline identity or other factors that give precedence to flights offered by the operator or by other airlines that have contracted with the operator for such an advantage; and "discriminatory access," the refusal of CRS operators to include in their data bases the flight information of competitor airlines at reasonable, nondiscriminatory prices. *See id.* at 41,171–72.

In 1984, the CAB issued final CRS regulations. *See Carrier-Owned Computer Reservations Systems,* 49 FED. REG. 32,540, 32,562–64 (1984) (codified as amended at 14 C.F.R. Part 255 (1986)). In relevant part, those regulations limited the ability of CRS operators to bias travel-agency displays, *id.* at 32,563 (codified as amended at 14 C.F.R. § 255.4 (1986)), required CRS operators to provide other airlines with nondiscriminatory access, *id.* (codified as amended at 14 C.F.R. § 255.5 (1986)), and forbade CRS operators to "receive payment from any [airline] for [CRS]-related services unless such payments [*sic*] are made pursuant to a contract complying with [the CRS regulations]," *id.* (codified at 14 C.F.R. § 255.9(a) (1986)). United and Republic challenged the regulations on various grounds, and their petitions for judicial review were denied. *See United Air Lines v. CAB,* 766 F.2d 1107 (7th Cir.1985). Although the CAB has been dissolved, the CRS regulations remain in effect under the authority of the Department of Transportation. *Transfer, Removal, and Reissuance of Regulations to Transportation Department,* 50 FED. REG. 451, 452 (1985).

Before promulgation of the CRS regulations, United and Republic had signed a series of contracts and amendments (which for ease of reference we shall call "the original agreement") the essence of which was that United agreed to include Republic's flight information in the data base of

Apollo, United's CRS, through September 30, 1985, in return for which Republic agreed to pay United a fee each time a travel agent used Apollo to make a reservation on a Republic flight. On September 17, 1984, after publication of the CRS regulations, United notified Republic and other airlines in Apollo's data base of its belief that the CRS regulations abrogated its contractual agreements with them. United also sent Republic and the other airlines a new, uniform contract, and informed Republic that unless it signed that contract, Republic's flight information would be deleted from Apollo's data base on November 14, 1984 (the effective date of the CRS regulations). The new contract significantly increased the fee to be paid by Republic. Republic executed the new contract on November 2, 1984, but advised United that it was doing so under duress and without prejudice to its available remedies.

Republic then brought suit in the District Court, alleging that United was in breach of the original agreement, and that United's threat to remove Republic from the Apollo data base constituted duress, since one-fourth of Republic's passenger sales revenue was attributable to reservations made through Apollo displays. United moved for judgment in its favor on the pleadings, and the District Court granted the motion. *Republic Airlines v. United Air Lines*, Civ. No. 85–692 (D.D.C. July 11, 1985). The District Court held that the original agreement provided for display bias in violation of 14 C.F.R. § 255.4 and a price that was discriminatory within the meaning of 14 C.F.R. § 255.5, and that those essential provisions were therefore unenforceable as a matter of federal law. Slip op. at 4–5. The District Court also held that Republic had not alleged facts sufficient under Illinois law to establish that it had signed the new contract under duress, because United's refusal to abide by the original agreement was not a "wrongful act" but rather a reasonable

business response to the CRS regulations and thus could not constitute duress; and because Republic alleged only the threat of economic injury, which likewise could not constitute duress. *Id.* at 6.

## II

On appeal, Republic challenges the District Court's determination on duress and its conclusion that the price provisions of the original agreement were inconsistent with the CRS regulations and therefore unenforceable. United argues for affirmance not only on the grounds upon which the District Court relied but also on an additional ground: that the CRS regulations abrogated contracts containing provisions inconsistent with the regulations.

■■■ There is of course no question that the CAB had the power, as a matter of federal law, to render the violative CRS contracts entered into by the airlines unenforceable from the effective date of the rule. *See* 49 U.S.C. app. §§ 1342(a), 1381 (1982 & Supp. II 1984); *National Licorice Co. v. NLRB*, 309 U.S. 350, 366, 60 S.Ct. 569, 578, 84 L.Ed. 799 (1940); *cf. Kent v. CAB*, 204 F.2d 263, 266 (2d Cir.), *cert. denied*, 346 U.S. 826, 74 S.Ct. 46, 98 L.Ed. 351 (1953). Although such action is not lightly to be found by implication, *cf. Bell Telephone Co. v. FCC*, 503 F.2d 1250, 1280–82 (3d Cir.1974), *cert. denied*, 422 U.S. 1026, 95 S.Ct. 2620, 45 L.Ed.2d 684 (1975), we think there is ample indication that that is what occurred here. The statement of basis and purpose accompanying promulgation of the CRS regulations stated that "[w]ith respect to the effect of our rule on existing [CRS] contracts, we are clarifying our intent and understanding that they become void as of the effective date of our rule." *Carrier-Owned Computer Reservations Systems*, 49 Fed.Reg. at 32,541, and that "[a]ll current contracts must be abrogated," *id.* at 32,556.[1] In its

---

1. We understand this latter statement to mean not that the regulations invalidated all CRS contracts, whether or not inconsistent with the regulations, but rather that, although they invali-

dated only those CRS contracts inconsistent with the regulations, all CRS contracts contained price or display-bias provisions that produced such inconsistency. *See, e.g., Carrier-*

order denying petitions for reconsideration of the regulations, the Board seemed to change its position, and sought to explain away its earlier statements, as follows:

> The Board did not adopt a rule on the status of existing contracts.... The statements in question in the preamble to the rule were merely the Board's opinion on the effect of the rule as a collateral issue of contract law.... The issue itself, if contested, must be decided by the courts, not the Board.

CAB Order 84–11–39 at 10 (Nov. 9, 1984), *quoted in* Brief for Appellant at 11.[2] While it is unquestionably true that the Board did not explicitly "adopt a rule on the status of existing contracts," the issue is whether the rule it did adopt had the *effect* of altering their status. If so, that effect could not be undone by mere denial in connection with the rehearing petition. In other words, the force of the rehearing statement ultimately depends entirely upon whether it is a reasonable explanation of what the Board had already done. In our view it is not. In no way can the Board's expressed "intent," in issuing the rule, "that [CRS contracts] became void," and its simultaneous direction that "[a]ll current contracts must be abrogated," be explained as merely the volunteering of an "opinion" regarding the consequences of state contract law. Even without those contemporaneous clarifications, an intent to leave the matter to state law is implausible. Such an intent could reasonably be discerned if the regulations did no more than prohibit implementation of the offending provisions (display bias and discriminatory access); it would then be a matter of state law whether those provisions were so central to the CRS agreements that the agreements

would be rendered unenforceable in their entirety. *See* RESTATEMENT (SECOND) OF CONTRACTS § 184 (1981). In fact, however, the regulations did not merely prohibit implementation of the offending provisions but, as to each contract that contains an offending provision, relieved one of the contracting parties of all obligation of performance. The regulations provide that CRS operators "shall not receive payment from any [airline] for [CRS]-related services unless such payments [*sic* ] are made pursuant to a contract complying with" the CRS regulations. 14 C.F.R. § 255.9(a). Having gone beyond the mere invalidation of the offending provisions to supplant state law insofar as concerns the effect of that invalidation upon the legal obligations of those who have contracted for inclusion of their data in the CRSs, it would be most peculiar to leave its effect upon the *other* side of the contract to state law. It would border upon the irrational to prevent the CRS operators from collecting any of the compensation they had bargained for, while leaving it to someone else to worry about whether—despite lack of compensation— the CRS operators would have to continue to perform their half of the bargain. The combination of the implausibility of this disposition and the explicit language of the statement of basis and purpose persuades us that the CRS regulations invalidated noncomplying contracts as a matter of federal law.

■ The District Court held that the agreement at issue here failed to comply with the CRS regulations in two respects: by providing that certain airlines (including United itself) would receive display preference, in violation of 14 C.F.R. § 255.4; and by providing for a price that was discrimi-

---

*Owned Computer Reservations Systems,* 49 FED. REG. at 32,556 (The CRS regulations "declare that the central provisions of existing CRS ... contracts are contrary to public policy.... In addition to the price provisions, other basic elements affected include ... [display-]bias provisions."). We have no occasion in this case to consider the accuracy of the Board's belief that all CRS contracts conflict with the CRS regulations.

**2.** The CAB has thus spoken twice (though inconsistently) concerning the effect of the CRS regulations on preexisting CRS contracts, and in its last pronouncement has indicated that any further illumination should come from the courts. In these circumstances, we think it would be both futile and unfair to invoke the doctrine of primary jurisdiction, holding this case in abeyance while the parties attempted to obtain from the Department of Transportation yet another agency interpretation.

natory within the meaning of 14 C.F.R. § 255.5. We need only consider the first of these. Republic has contested neither the accuracy of the District Court's conclusion regarding display preference nor the regularity of the process by which that conclusion was reached. We therefore must conclude that the original agreement between United and Republic failed to comply with the regulations and was thus unenforceable as a matter of federal law. In light of this conclusion, we need not reach the other issues in the case.

The District Court's judgment on the pleadings against Republic for failure to state a claim is

*Affirmed.*