### In re "APOLLO" AIR PASSENGER COMPUTER RESERVATION SYSTEM (CRS).

**MDL No. 760.**
**No. M–21–49–MP.**

United States District Court,
S.D. New York.

April 5, 1989.

---

Duker & Barrett (William F. Duker and Richard L. Crisona, of counsel), New York City, for Travel Agent Parties.

Susman Godfrey (Stephen Susman and Parker Folse, III, of counsel), Houston, Tex., for System One Direct Access, Inc.

Covington & Burling (S. William Livington, Carolyn F. Corwin and William E. O'Brian, of counsel), Washington, D.C., for United Air Lines, Inc. and Covia Corp.

## DECISION

MILTON POLLACK, Senior District Judge.

The court has heretofore announced that the defenses which have been numbered 1 and 6, the numbering having been expressed in the discussion with counsel, so we are very clear as to what we are talking about, namely, antitrust defense and accord and satisfaction defense, those matters are continued and are not being passed upon at this time as to the sufficiency of those defenses.

As to the remaining matters denominated heretofore as defenses 2, 3, 4 and 5, the court observes that there is no issue for trial unless there is sufficient evidence for a jury to return a verdict in favor of the person asserting the particular defense and that there is, in fact, a genuine dispute as to a material fact.

It is essential that there exist a genuine issue for trial on relevant matter. The purpose of Rule 56 is to pierce the pleadings and assess the proof to find specific probative, admissible evidence in support of relevant matter and where there can be but one reasonable conclusion as to a jury's verdict a decision under Rule 56 is called for.

The initial burden, of course, is on the moving party, in this case, United Airlines, and that burden is discharged upon a showing of an absence or insufficiency of evidence to support the nonmoving party's case.

In this case, United Airlines is in practical effect pitted against its competitor,

System One, owned by some subsidiary of Texas Air, in the supply of CRS to travel agents. The 18 travel agencies here involved are located at various places around the country. For example, Alabama, Florida, Colorado, Utah, Houston, Hawaii, Kansas and Omaha. Each agency was under a written five-year contract for the use of United Airlines' CRS. Each was lured away from UAL by System One while its contract was yet unexpired by inducements of a lower cost and better services from the rival CRS of System One, plus an agreement to indemnify the travel agent against its liability to UAL for breach of of contract and an agreement to defend UAL's lawsuit to recover its damages under the breached contract.

■ I turn to the specific defenses that have been treated in the discussion with counsel and the search among the platitudinous papers presented in opposition to the Rule 56 motion of United and I turn first to the most extreme one of the defenses, the defense of unconcionability asserted by Mr. Duker on behalf of and with the approval of his client, Protea travel. Originally, virtually all of travel agency parties raised unconcionability as a affirmative defense. In February 1989, after United filed its Rule 56 motion, all the agencies, except Protea Travel, dropped that defense. Protea had routinely been late in paying Apollo bills prior to considering System One as a substitute supplier of CRS. In support of the unconcionability defense Protea now asserts that when it began to consider System One United retaliated by demanding immediate payment of past due accounts and United actually went so far as to remove Apollo from Protea before System One was installed, for non-payment of the charges fixed by their mutual contract. Protea claims:

"United's behavior in suddenly removing Apollo's equipment on the ground of late payment, even though such payment was pursuant to the parties' regular course of dealing, combined with a claim almost eleven times the amount of unpaid bills for which United terminated the contract makes United's claim for enforcement of the liquidated damages clause patently unconscionable."

Protea's argument mischaracterizes the facts so far as they can be gleaned from this record, which has been described adequately in prior portions of the minutes of these proceedings. Protea contracted the System One on December 8, 1986. A Protea employee testified that thereafter an Apollo representative: "Told me that she had been advised by the sales office that I had signed a contract with System One and that I was going to be being installed (probably meaning reinstalled) I don't know what date it was and that she was not going to be able to come back into my office."

Mr. Helenbrook of United testified that United received notice that Protea intended to have Apollo equipment removed once System One was installed; that United contacted Protea and advised that deautomation would occur unless Protea paid past due amounts. Miss Burns of Protea asked United not to disconnect Apollo until System One was hooked up.

On March 20, 1987 United scheduled a disconnect of Protea for March 24. A United agent subsequently collected a partial payment of $760 on account of the October through February invoices and United deautomated Protea on March 25, 1987.

There is nothing in the record of a specific, probative, admissible character that indicates when United first threatened to deautomate. The affidavit of Merrily Burns states that United threatened harm to Protea's business before she advised that System One would be installed.

Protea's arguments on the flimsy evidentiary showing of unconscionability falls far short of the required measure. Being five months in arrears on a contract does not appear to be a "trivial breach" so as to make the liquidated damages a penalty, particularly when combined with a anticipatory repudiation of the contract. In the Restatement of Contracts (second) section 208, it is indicated that unconscionability, where that defense is appropriate is evaluated at the time of contracting. And I quote: "If a contract or term thereof is

unconscionable at the time that the contract is made, a court may refuse to enforce the contract or may enforce the remainder of the contract without the unconscionable term or may so limit the application of any unconscionable term as to avoid any unconscionable result."

If evaluated at the time the contract is made according to the evidence before the court, Protea's argument boils down to nothing more than a rehashing of the liquidated damages issue decided in Austin.

Furthermore, the contract does not appear to be unconscionable under the very standards cited by Protea. Protea states the following elements are to be weighed in determining unconscionability and I quote:

"The various factors in deciding questions of unconscionability have been divided into 'procedural' and 'substantive' categories. Under the 'procedural' rubric come those factors bearing upon what are called the 'real and voluntarily meetings of the minds' of the contracting parties: Age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question. The 'substantive' heading embraces the contractual terms themselves and requires a determination whether they are commercially reasonable."

That quotation comes from *Johnson v. Mobil Oil Corporation*, 415 F.Supp. 264, 268 (E.D.Mich.1976).

Applying the legal criteria to the undisputed facts of this case indicates that the contract was not unconscionable and that the defense is sadly wanting in anything to support such a notion. Nothing in the record indicates that the persons negotiating the contract for Protea were of an age, education or intelligence level such that they could not understand the terms or import of the contract entered into. All we know is that Protea's agents were business people and reviewed the competing SABRE System which was available in 1985 before contracting with United. Although United may have presented the contract on a take it or leave it basis, that alone does not render the contract unconscionable. The defense is accordingly dismissed.

■ Turning now to the allied defenses of coercion and duress, which have been numbered above as Defense No. 5: —I believe that there were 9 travel agencies who assert that defense, namely: Travel Express, Braley Travel, Global Travel, Key Travel, Mid–States Travel, TV Travel, Protea Travel, Robinson Travel and Travel Kingdom. Such defenses depend on a sufficient factual showing that a contracting party was induced to enter into a contract under circumstances which deprived him or it of the exercise of his or its free will. Assertions of, indeed insistence on lawful conditions on which one is willing to contract with another cannot at a later stage, after the contract has been in force for a period of time, be extrapolated into a basis for avoiding the contractual obligation undertaken. Freedom of choice is not impaired when a bargain has been struck by the parties and agreed to. When a party acts within his legal rights and bargains for a contract, a complainant cannot make out a claim of economic duress when he falls into default. Hard bargaining, if lawful, is not to be deemed duress under the law. The alleged duress must be shown to have been the result of the plaintiff's conduct and not the defendant's own necessities. No admissible, specific, probative facts have been adduced in support of the alleged unlawful duress defense. There could be but one reasonable conclusion on the relevant evidence submitted as to a jury's verdict on this subject and the requisite evidence is wanting both as a matter of law and fact. In short, a party to a contract cannot take the benefits of a contract and later claim the contract was void. That is not coercion or duress as recognized by the law.

Accordingly the asserted defense of coercion and duress is struck as insufficient in law and fact.

■ Now, I turn to Defense No. 2, that the contract violates 14 CFR Section 255.-6(b), which provides that: "No system vendor shall directly or indirectly prohibit a subscriber from obtaining or using any other system." This court has heretofore held in the System One litigation that no private right of action exists for violation of the CAB regulations. See my Order No. 3 at page 5.

At the hearing held by this court on November 10, 1988, the court advised the parties that matters related to these claimed violations were not open for further discovery in light of Order No. 3. The travel agencies suggest that the court made this determination without any briefing or argument from the parties and further state that two courts considering the identical issue concluded that a private right of action does exist. But neither of the cited cases holds directly that a private right of action exists. In *Transworld Airlines, Inc. v. Passport Travel, Inc.*, number 85–2618, slip opinion (D.Kansas, January 7, 1987) the court did not consider this issue but merely stated that a factual question existed as to whether the agreement violated the CAB rules at all. In *Republic Airlines, Inc. v. United Airlines, Inc.*, 796 F.2d, 526 (D.C.Cir.1986) affirming on other grounds number 85–692 slip opinion (DDC July 1, 1985), the plaintiff air carrier sought enforcement of a prerule listing agreement with a CRS vendor. The vendor claimed the contract was not enforceable because it violated the CRS rules.

Section 255.9(a), however, provides:

"The obligations of a system vendor under section 255.4 [requiring CRS vendors to list carriers in a nondiscriminatory fashion] shall not apply with respect to a carrier that refuses to enter into a contract that complies with this part. A system vendor shall not receive payment from any carrier for system-related services unless such payments are made pursuant to a contract complying with this part."

The Republic court found an express intent in the rules to abrogate contracts. Section 255.6 includes no such express cause of action.

Now, turning to the factual basis involved: Regardless of whether a private right of action exists, the minimum use requirement does not make United's contract an exclusive dealing arrangement. On its face, the clause does not prevent travel agencies from using other CRSs. The clause merely sets a benchmark for use equal to one half of the average use during the first six months of a contract. Travel agency preferences for a single CRS (because of the training and coordination difficulties) and vendors' failure to actively pursue the secondary CRS market do not convert United's contract into an exclusive dealing arrangement. Competing CRS vendors could avoid the need for indemnification by agreeing to provide CRS service beyond the minimum use requirements and wait for the Apollo contract to expire.

Further, United's minimum use requirement with its set formula for calculating the use required does not appear any more onerous than System One's "substantial use" clause or the "active use" clause at issue in TWA, supra. Those formulations prevent a travel agency from knowing exactly when or if its contractual obligation has been met and would seem an even stronger deterrent to multiple CRS use.

The plain language of the rule does not encompass the travel agencies' suggestion offered today that United's contracts violate the rule because they might prevent switching, rather than merely concurrent use.

Accordingly, the so-called regulatory defense, Defense No. 2, is struck as insufficient in law and not established by any facts.

■ Turning now to the remaining defense to be treated here, Defense No. 3, the defense raising the issue of liquidated damages and collateral estoppel: The travel agencies by stipulation dated November 9, 1988, claim as a affirmative defense that:

"The liquidated damages provisions of the contract are unenforceable as penalties because inter alia (a) they bear no reason-

able relationship to actual or anticipated damages that would be incurred by United in the event of a breach; (b) they apply to all breaches regardless of magnitude; (c) the damages that United allegedly suffers as a result of a breach are ascertainable at the time of contract; and (d) they were intended to punish travel agencies for subscribing to competing systems and to deter the agencies from subscribing to such systems."

United contends that the travel agencies are collaterally estopped from raising that defense by the decision in *United Air Lines, Inc. v. Austin Travel Corp.*, 681 F.Supp. 176 (S.D.N.Y.1988) affirmed 867 F.2d 737 (2d Cir.1989).

■ Under collateral estoppel, if an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. *Montana v. United States*, 440 U.S. 147, 159, 99 S.Ct. 970, 976, 59 L.Ed.2d 210 (1979). This doctrine protects a party's adversaries from the expense and vexation of multiple lawsuits, conserves judicial resources and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions. The United States Supreme Court in *Montana* stated:

"These interests are similarly implicated when nonparties assume control over litigation in which they have a direct financial or proprietary interest and then seek to redetermine issues previously resolved. The persons for whose benefit and at whose direction the cause of action is litigated cannot be said to be 'strangers to the cause.' One who prosecutes or defends a suit in the name of another to establish or protect his own right or who assists in the prosecution or defense of an action in aid of some interest of his own is as much bound as he would be if he had been a party to the record."

The evidence presented here from the lips of the president of System One is conclusive on the control and management of these travel agency cases by System One.

In *Montana* the Supreme Court held that the federal government, a nonparty who exercised control over prior litigation, could be precluded from relitigating an issue determined in that litigation. The court noted the following as evidence of the government's control: The government required the prior suit to be filed, reviewed and approved the complaint, paid attorneys fees and costs and directed the appeal and procedures on appeal. System One similarly exercised complete control and management over the defense in *Austin Travel*. It had agreed to indemnify Austin Travel and it paid for and directed counsel in all phases of the litigation, including the appeal. The travel agencies in their affidavits opposing United's present motion state that: "In consultation with my lawyers, I have determined positions taken by Nob Hill in this litigation." The provisions of indemnity agreement and the fact that the agencies have not generally been represented by separate counsel in the proceedings seems to flatly contradict this assertion. System One, although not directly a party to the travel agency suits, exercises control over this litigation. The indemnity agreements between System One and the travel agencies state:

"System One will have the right to defend Customer against any claim or cause of action asserted by United arising from the termination of Customer's Apollo System agreement and System One will indemnify Customer for any damages arising from any final judgment based upon a claim or cause of action. Upon the assertion of any such claim or cause of action, System One shall have the right to direct and control all legal matters relating to such claim or cause of action and customer shall cooperate fully with System One. System One will be responsible for the payment of all attorneys fees for matters covered by this paragraph, including any such fees incurred by System One."

As we saw earlier today, there is a clause in the contract that requires the agency to breach the Apollo contract and the specific language was established on the record in that respect. Even though System One is not a party to the travel agency cases

colateral estoppel must apply here under the reasoning of *Montana.* The purposes behind the collateral estoppel doctrine, protection from the expense and vexation of multiple lawsuits, conservation of judicial resources and fostering reliance on judicial action by minimizing the possibility of inconsistent decisions, apply a fortiori to these consolidated actions. 46 separate suits involving travel agencies have been consolidated to date. System One, self-evidently, controls the defense of all these suits. System One was well aware that the court's rulings in *Austin Travel* might operate to prevent relitigation in other travel agency cases. Nonetheless the travel agencies urge that the elements of collateral estoppel are lacking here. They contend these cases involve different issues regarding liquidated damages. The court's holding in *Austin* they suggest was predicated on the fact that the parties there were sophisticated business persons acting at arms-length. Now, they suggest that the travel agencies here were not sophisticated, were not aware of the liquidated damages clause and did not understand the contract they were signing. Of course, there is no such proof before the court other than the parties' self-serving statements, nothing in the record seems to support this. A competent person is held responsible for his signature to a document which has not been fraudulently procured. He is bound to know, bound to read what he signs.

For good measure the travel agencies further contend they did not have a full and fair opportunity to litigate because discovery was limited in *Austin Travel.* Discovery in the System One case they claim uncovered evidence indicating United adopted the clause for liquidated damages to prevent switching to other CRSs and that saved costs exceed 20 percent of the contract price. The cited evidence is irrelevant on this issue under the law which was clearly established in the *Austin Travel* case and the requirement to judge liquidated damage clauses as at the inception of the relationship and without a micrometer to fix with precision the amount of those damages, that the damages stipulated to were reasonable was established and so held by this court's decision affirmed by the Court of Appeals in *Austin Travel.*

The cited evidence does accordingly not prevent collateral estoppel from precluding relitigation.

Accordingly, the Defense No. 3 in these travel agency cases attacking and presenting the liquidated damages provisions of the contract must be and is struck as insufficient in fact and law.

I would be remiss were I not to comment on the character of the papers oppressively utilized by the travel agencies in presenting the foregoing defenses on these motions. The submission on behalf of the travel agencies on these motions has been so ponderous, extravagent and overblown, largely devoid of specific probative, admissible, relevant, factual content and of a colorable legal basis that the strong impression is left of calculated vexatiousness, harassment and a purpose to obfuscate the absence of pertinent substance. In short, the exercise imposed by the travel agencies on the court is inexcusable. The excesses are chargeable both to counsel and to clients. It takes a Herculean effort to cope with the excessiveness here presented. Surely an attempt, as construed from the nearly 1400 or 1500 printed pages of documents submitted by the travel agencies, was here undertaken to overwhelm this and any other court called upon to search among the debris for matter properly to be considered. The attempt, advertent or inadvertent, to overwhelm anyone called upon to pass on the questions presented with a degree of implausible argument and absence of legal basis shown in these papers defies description and is deplorable.

An order to the foregoing effect with respect to the dismissal of the four affirmative defenses referred to above should be submitted on notice. It is so ordered.