In re "APOLLO" AIR PASSENGER
COMPUTER RESERVATION
SYSTEM (CRS).

MDL No. 760.
No. M–21–49–MP.

United States District Court,
S.D. New York.

Aug. 28, 1989.
As Corrected Aug. 31, 1989.

Covington & Burling (S. William Livingston, Carolyn F. Corwin and William E. O'Brian, of counsel), Washington, D.C., for United Air Lines, Inc. and Covia Corp.

Susman Godfrey (Stephen Susman and Parker Folse, III, of counsel), Houston, Tex., for SystemOne Direct Access, Inc.

Duker & Barrett (William F. Duker and Richard L. Crisona, of counsel), New York City, for the Travel Agency Parties.

## OPINION AND ORDER

MILTON POLLACK, Senior District Judge.

The Judicial Panel on Multi–District Litigation ("MDL" hereafter) centralized 21 cases pending in eight federal districts pursuant to 28 U.S.C. § 1407 on finding that the 21 actions in this MDL–760 docket involved common questions of fact and that centralization in the Southern District of New York (two of the cases were pending here) would best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. In designating this as the transferee forum, the Panel noted that this Court, had already considered and decided a comprehensive summary judgment in one of the actions in this docket.[1]

Additional travel agency cases were subsequently transferred to this docket by the MDL so that there are 60 in all pending here. The additional cases were stayed pending resolution of the first wave of cases. These consolidated actions arise out of breach of travel agency subscriber contracts for the lease of Apollo equipment, United Air Lines, Inc.'s computerized reservation system (CRS). Each of the travel agencies terminated its Apollo lease before its term expired and switched to System-One Direct Access, Inc. ("SystemOne"), a competing CRS vendor, under an agreement that SystemOne would defend the agency in any lawsuit brought by United and indemnify the agency for any damages incurred as a result of the breach.

United has moved for summary judgment under Fed.R.Civ.P. 56 to dismiss the antitrust claims asserted by SystemOne against United and the antitrust defenses interposed by the 18 [2] Travel Agency defendants currently before the court. Those defenses parallel the antitrust claims on which SystemOne sues. Attorneys designated and paid for by SystemOne have directed and controlled the defense of the actions against the travel agencies pursuant to the indemnity agreements mentioned above.[3]

### I.  *Procedural Background*

Prior to consolidation of the MDL–760 actions this Court had on its docket two actions in which United sought contract damages from the travel agencies for the premature termination of Apollo leases. In each action, United sought recovery of the rental due for the unexpired term of the Apollo lease, and liquidated damages for the breach of contract. In one of these cases, *United Airlines v. Austin Travel Agency*, a test case for several similar claims pending in other federal districts, the travel agency defended, *inter alia*, on the basis that the contract's liquidated damages clause was void as a penalty. Austin also counterclaimed on the ground that the Apollo lease violated § 3 of the Clayton Act, 15 U.S.C. § 14, and §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. SystemOne paid for Austin's counsel and controlled and directed that litigation.

On a Rule 56 motion in *Austin Travel*, judgment was entered in favor of United for the unpaid rental due for the unexpired lease term and for contract damages. Austin's counterclaims and defenses were also dismissed. Both this Court and the Court

---

1. *United Air Lines, Inc. v. Austin Travel Corporation, et al.*, 681 F.Supp. 176 (S.D.N.Y.1988) (Pollack, J.), *aff'd*, 867 F.2d 737 (2d Cir.1989).

2. The 21 actions originally consolidated by the MDL Panel, included SystemOne's action against United and 20 actions by United against travel agencies. Judgment was entered in one of the travel agency actions, *Austin Travel*, and a second action was settled and dismissed by stipulation.

3. The indemnity agreements between System-One and the Travel Agencies state:

SystemOne will have the right to defend Customer against any claims or cause of action asserted by United ... arising from the termination of Customer's APOLLO system agreement, and SystemOne will indemnify Customer for any damages arising from any final judgment based upon a claim or cause of action. Upon the assertion of any such claim or cause of action, SystemOne shall have the right to direct and control all legal matters relating to such claim or cause of action, and Customer shall cooperate fully with System-One.... SystemOne will be responsible for the payment of all attorneys' fees for matters covered by this paragraph, including any such fees incurred by SystemOne.

of Appeals in *Austin*[4] held that the liquidated damage clause was valid; and specifically found that there was no showing of any antitrust violation by United and the agency could not prevail on monopolization claims, unreasonable restraint of trade claims, or price discrimination claims. *Austin* preclusively established that Apollo's liquidated damage clause was, at the time of its execution, a reasonable forecast of damages in case of breach, and therefore enforceable.

Meanwhile, SystemOne filed a complaint in the Southern District of Texas on February 22, 1988 claiming that, both nationally and in a few local areas, United had monopolized or attempted to monopolize the provision of CRS services to travel agencies; United had engaged in exclusionary practices; and the Apollo subscriber agreements violated the Sherman and Clayton Acts and should be declared void and unenforceable. This suit was transferred to this docket by the MDL Panel on June 2, 1988 for coordinated or consolidated pretrial proceedings with United's actions against various travel agencies.

During the course of the discovery in the coordinated proceedings, SystemOne assumed the laboring oar on antitrust matters.[5] The travel agencies stipulated to liability on their Apollo CRS contracts subject to certain affirmative defenses. The affirmative defenses reserved were that the contracts are unenforceable because: 1) they violate antitrust laws; 2) they violate 14 C.F.R. § 255.6, which proscribes CRS vendors from prohibiting subscribers from obtaining or using another system; 3) the liquidated damages provisions constitute an unenforceable penalty; 4) they are unconscionable; 5) certain travel agency parties executed the contracts under coercion and duress; and 6) certain contracts

were discharged by an accord and satisfaction.

United moved under Rule 56 to dismiss the travel agencies' affirmative defenses. Certain travel agencies filed a cross-motion on their defense of accord and satisfaction. In a decision rendered April 5, 1989, 720 F.Supp. 1061, the Court dismissed all defenses (# 2–5 above), except those asserting antitrust violations and accord and satisfaction. Following a Rule 43(e) hearing on May 8, 1989, the Court granted judgment on the accord and satisfaction issue (defense # 6 above) against two travel agencies, found an accord as to one, and determined that a triable issue of fact existed as to one agency's claim of accord. The Court deferred consideration of the antitrust defense (# 1 above) in the remaining travel agency cases pending completion of discovery in the coordinated SystemOne antitrust action.

Discovery completed by SystemOne, United filed the present motion under Rule 56 for judgment in its favor against SystemOne and the travel agencies, on the antitrust issues posed. Those issues have been amply briefed by the parties,[6] and oral argument was held July 21, 1989.

For the reasons set forth below, United's motions for summary judgment on the antitrust issues raised will be granted and these actions terminated.

## II. *Standard for Decision—Rule 56*

Summary judgment will be rendered only when no genuine issue as to any material fact exists. Fed.R.Civ.P. 56(c). In assessing whether the evidence presents a genuine dispute as to a material fact, the Court must apply the same standard that governs a directed verdict, *i.e.*, whether, "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

**4.** Familiarity with the *Austin Travel* decisions, 681 F.Supp. 176 (S.D.N.Y.1988), *aff'd,* 867 F.2d 737 (2d Cir.1989), will be assumed.

**5.** By stipulation filed November 15, 1988, the travel agency parties agreed that they would not conduct their own discovery on antitrust matters, but would rely on SystemOne's discovery relating to that subject.

**6.** The Court has been deluged by documents from SystemOne and the travel agency parties. These parties submitted over 200 pages of briefs on the two motions, and a huge stack of exhibits —1300 pages in opposition to United's first motion for summary judgment, and 64 multi-page exhibits in opposition to the present motion.

242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*, at 249–50, 106 S.Ct. at 2511 (citations omitted).

The moving party bears the initial burden of establishing that no relevant facts are in dispute. *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975). The movant may discharge that burden upon a showing of an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Then, if "the nonmoving party ... fail[s] to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial," no genuine issue of material fact exists and the moving party is entitled to summary judgment. *Id.* at 322, 106 S.Ct. at 2552. Rule 56 allows the Court to dispose of meritless claims before becoming engaged in a frivolous and costly trial. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

In an antitrust action, evidence that is as consistent with permissible competition as with illegal anticompetitive conduct will not, standing alone, support an inference of violation of the antitrust laws. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), citing *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984). To survive a motion for summary judgment, an antitrust plaintiff must present evidence that tends to exclude the possibility that defendant's conduct was consistent with competition. *Id.*, see also, *Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409 (7th Cir. 1989).

SystemOne failed to exhibit evidence on the essential elements of its claims for relief, from which a reasonable jury could infer a violation of the antitrust laws. Nor did the travel agencies evidence a factual basis for their parallel antitrust defenses. The tonnage of paper submitted creates little more than a mirage, which proves just as evanescent on close scrutiny. The evidence in these cases "is so one-sided that one party must prevail as a matter of law," *Anderson v. Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512, and does not present "a sufficient disagreement to require a submission to a jury." *Id.*, 251–52, 106 S.Ct. at 2512.

### III. *Factual Background*

The underlying facts as to which the parties admit that there is no genuine issue to be tried are the following:

United owns and markets to travel agents across the country a computerized reservation system (CRS) known as Apollo. A CRS gives a travel agent, through a computer terminal located in its office and linked with the vendor's computer, access to a vast data bank that includes flight listings of virtually all airlines, as well as information on many hotels, rental car companies, and other travel services. Travel agents use the system to book flights, print tickets and itineraries, to store information on customers' travel plans, and perform a variety of other travel related functions. Almost all domestic travel agencies today subscribe to a CRS to sell airline tickets.

There are five major CRS vendors in the United States: American Airlines (the "SABRE" system); United (the "APOLLO" system); SystemOne (the "SystemOne" or "SODA" system); Pars Marketing Corp., owned by TWA and Northwest Airlines (the "PARS" system); and Delta Airlines (the "DATAS II" system). United and American were the early entrants into the field. SABRE has always been the largest CRS vendor in the United States. Based on SystemOne's figures, in 1986 SABRE was the principal CRS vendor at 38% of travel agency locations and accounted for 45% of industry sales. In 1986, Apollo was used in 25% of travel agency locations and accounted for 32% of industry sales. SystemOne entered the market near the end of

1981, and at the end of 1987 was used at 20% of travel agency locations which accounted for 8.72% of CRS revenues.

In 1984, the Civil Aeronautics Board adopted regulations setting forth requirements for the operation of CRSs by air carriers. These rules: proscribed bias in the listing of flight information which tended to artificially inflate the desireability of the vendor's flights; required vendors to charge uniform booking fees to all carriers; limited subscriber contracts to terms of five years; prohibited a vendor from requiring subscribers to use its system in booking flights on its airline; and proscribed direct or indirect prohibitions against subscribers obtaining or using other systems. *See* 14 C.F.R. § 255.

The CAB Rules prohibited contractual provisions used by United up to that time. For example, Apollo contracts frequently provided for seven year terms and required subscribers to use Apollo for 95% of the tickets written which contained one or more United flight segment.

After the CAB's promulgation of the new CRS rules, United revised its contracts. Beginning in the spring of 1985, the standard Apollo contract was cut down to the approved 5 year term, and contained a non-exclusivity and minimum use clause,[7] and a liquidated damages clause.[8] In 1985, United conducted a renewal campaign to replace old (pre-CAB Rule) subscriber contracts and promoted new contracts with the new clauses.

When a CRS vendor asks an agency to replace its existing contract with a new contract, the agency is free to demand something in return. Frequently, agencies will insist on discounts or other improved terms. Contract renewals enable subscribers to take advantage of new lower prices in the area. To persuade travel agencies to sign the new contracts in its 1985 renewal program, United offered various incentives, including free months and discounts.

It was after the travel agencies had signed such new Apollo subscriber contracts that SystemOne induced the 18 travel agents to breach their Apollo contracts and substitute SystemOne.[9] United filed suit against the travel agencies for such breach of contract. SystemOne countered by filing suit against United claiming the Apollo contracts violated federal antitrust laws.

## IV. *Analysis*

### A. *Clayton Act Claims*

■ SystemOne makes a claim for relief under § 3 of the Clayton Act, 15 U.S.C. § 14, on the basis that Apollo contracts are, in effect, exclusive dealing arrangements which substantially lessen competition in the market for providing CRS service to travel agencies. By its terms, violation of § 3 requires some kind of agreement or practice excluding use of a competitor's goods. SystemOne argues that in determining whether a contract violates § 3, a

---

7. That clause reads:

   A. United and Subscriber acknowledge that this is a non-exclusive agreement and nothing in this Agreement will be construed as precluding or prohibiting Subscriber from using any other computerized reservation service or system in its operations. United and Subscriber also acknowledge, however, that the monthly fixed charges under this Agreement have been established at a level which reflects the expectation that Subscriber will actively use Apollo Services in its operations to process Apollo Transactions.

   B. Each month during the term of this Agreement Subscriber will process through each Apollo CRT listed on Attachment A the Monthly Minimum Guarantee of Apollo Transactions.

   C. "Monthly Minimum Guarantee" means fifty percent (50%) of the monthly per CRT

mean average of Apollo Transactions processed by the Subscriber locations listed on Attachment A during the first six (6) months of this Agreement or during the period that the Apollo Equipment is installed and operational, whichever period is shorter.

8. United's revenue from Apollo contracts has 3 components, a fixed monthly fee charged to a travel agency for use of the system, certain variable charges based upon a travel agency's generation of tickets or itineraries, and booking fees collected from airlines. The liquidated damages clause calls for payment of 80% of the first two items, plus an amount for booking fees based on the Monthly Minimum Guarantee.

9. SystemOne's contract with at least one of the travel agency parties (Protea Travel) required that agency to remove all Apollo equipment.

court must consider the practical effect of the challenged arrangements—an express exclusivity clause is not required. That is an accurate statement of the law. On two prior occasions, however, the Court held that the Apollo contracts were not exclusive dealing arrangements—either on their face or in effect.

■ This same *de facto* exclusive dealing argument was considered and rejected in *Austin Travel*, 681 F.Supp. 176, 184, aff'd, 867 F.2d 737, 742. SystemOne controlled that litigation, and collateral estoppel therefore precludes relitigation of the issue here. *Cf., Montana v. United States*, 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979), *Alpert's Newspaper Delivery, Inc. v. New York Times Co.*, 876 F.2d 266 (2d Cir.1989). The Court's April 5, 1989 decision again precluded the issue. Considering the travel agencies' defense under 14 C.F.R. § 255.6, the Court held that the Apollo contracts were not, on their face or in effect, exclusive dealing arrangements. SystemOne's counsel attended the hearing and argued on that precise point. The issue is precluded.

## B. *Sherman Act, § 1 Claims*

■ SystemOne claims United's contracts with the travel agencies violate § 1 of the Sherman Act, 15 U.S.C. § 1, which provides:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States ... is declared to be illegal.

Claimed violations of this section are analyzed under the "rule of reason"; the factfinder must weigh all the circumstances in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition. *See, e.g., Continental TV, Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977). This analysis further requires consideration of whether the restraint regulates and perhaps promotes competition, or suppresses or even destroys competition, looking at the business to which the restraint applies, its condition before and after imposition of the restraint, the nature of the restraint, and the actual or probable effect of the restraint. *Chicago Bd. of Trade v. United States*, 246 U.S. 231, 238, 38 S.Ct. 242, 244, 62 L.Ed. 683 (1918).

■ SystemOne first argues that because its claim must be evaluated under the "rule of reason" a factual question exists, ergo, a trial is automatically indicated and the Court cannot grant summary judgment. This assertion runs contrary to the standard for decision on Fed.R.Civ.P. 56 motions. SystemOne must point to evidence sufficient to establish each element of its case; and must show that there is evidence that tends to exclude the possibility United's conduct was consistent with competition. *See, Matsushita*, 475 U.S. at 588, 106 S.Ct. at 1356, *Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1413 (7th Cir.1989). The inflated record contains no such evidence.

SystemOne points to three of United's contractual provisions and practices which they claim are anticompetitive: 1) the liquidated damages provision; 2) the minimum use clause; and 3) the "rollover policy" which encourages sales staff to solicit early renewals of Apollo leases. Stepping back from the rhetoric to examine the matters complained of, it does not appear that SystemOne has presented evidence demonstrating that United's lease terms or renewal practices are unreasonably exclusionary or control prices.

*Liquidated Damages:* SystemOne points to United's liquidated damages clause as "an integral part of its anticompetitive scheme, because it was designed and has operated to deter conversions by increasing the costs of conversion." This argument makes several erroneous assumptions, not supported by law or fact.

■ The mere fact that an obligation to pay damages upon breach of contract may deter or impede a travel agency from breaking its contract and signing up with another vendor, does not make that obligation invalid under the rule of reason. The ingredients of the obligation due Unit-

ed, as quantified in the Apollo liquidated damage clause,[10] were found to be fair and reasonable by the Court of Appeals. Certainly, SystemOne cannot claim that enforcement of a simple contract for the provision of CRS services, silent on the question of damages, would violate the antitrust laws. A rule prohibiting CRS vendors from proceeding against travel agencies who breach their contracts would not promote competition in the market. Without some way of insisting that travel agencies live up to their contracts, CRS vendors would be discouraged from entering the market to compete.

SystemOne has not produced any evidence showing how the liquidated damages clause makes the Apollo contract more restrictive than a contract silent on the point of damages. The *Austin* decision, as affirmed, clearly established the reasonableness and enforceability of that clause under state law, and SystemOne is bound by that determination. In the absence of such a clause, upon breach of the contract, United would be entitled to recover its expectancy under the contract. Restatement (Second) of Contracts, § 347. The measure of damages would include foreseeable consequential damages. *See, Id.*, §§ 347 and 351.

■ It follows from this, that a liquidated damages clause, valid under state law, is no more exclusionary than the underlying substantive agreement it helps to enforce. Two cases decided by the Court of Appeals for the First Circuit, bolster this conclusion. *See, Barry Wright Corp. v. ITT Grinnell Corp.*, 724 F.2d 227, 238 (1st Cir.1983), and *CVD, Inc. v. Raytheon Company*, 769 F.2d 842 (1st Cir.1985) *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 312 (1986). These two cases, read together, suggest that for enforcement of an otherwise valid contract to constitute a violation of the antitrust laws, one must show: 1) that the substantive contract provisions are anticompetitive; or 2) assertion of a claim in bad faith. SystemOne has not

shown either. The liquidated damages clause neither enhances nor ameliorates any anticompetitive effects of the substantive terms of the contract. Notwithstanding SystemOne's correct assertion that the Court must consider United's practices as a whole, its discussion of the "anticompetitive effects" of the liquidated damages clause is irrelevant.

■ SystemOne's expert (Mr. Gilbert) does not offer anything to suggest this conclusion is incorrect. The expert opines that in a competitive market, liquidated damages would be limited to "sunk costs" *i.e.*, those costs specific to a travel agent that are non-recoverable if the agent terminates. In legal terms, Mr. Gilbert suggests the fact that United recovers something more than its reliance damages is evidence of improper exclusionary practices. He does not, however, bridge this extraordinary leap of reasoning by explaining the factual or logical basis for his opinion.

■ *Minimum Use:* The Apollo minimum use clause [11] requires subscribers to actively use Apollo for bookings; the subscriber must use Apollo at least half as much as it did, on the average, during the first six months of its contract. As with the liquidated damages clause, SystemOne has not shown that this clause excludes, suppresses or destroys competition in the market for providing CRS services to travel agencies. The record presented is replete with evidence that booking fees represent the largest or most significant source of revenues from the provision of CRS services. This fact provides the basis for SystemOne's contention that booking revenues, rather than locations or numbers of CRTs, supplies the most appropriate measure of market share.

Booking fees, of course, are not generated unless a travel agency uses a CRS to book flights. A rule prohibiting CRS vendors from contractually assuring themselves [12] of at least a portion of the most

10. See footnote 8, *supra*.

11. See footnote 7, *supra*.

12. Vendors cannot set the minimum use requirement so high as to create an effective exclusive dealing arrangement, without violating 14 C.F.R. § 255.6(b) and perhaps the antitrust

significant source of revenue for the service they sell, would not promote competition or encourage additional vendors to enter the market place and compete. SystemOne's evidence indicating that United adopted the minimum use clause to insulate its market share from conversion by competitors does not alter that conclusion.

■ *Rollover Policy:* SystemOne claims that United's "rollover policy," where subscribers are solicited for early renewals before their Apollo leases expire,[13] is unreasonably anticompetitive because it effectively extends the term of the Apollo leases beyond five years. It cites two pieces of evidence in support of this assertion: 1) United consistently followed a practice of soliciting renewals of its Apollo subscriber agreements before expiration, beginning with a nationwide campaign in 1985 after issuance of the new CAB rules; and 2) because of the early renewal program in 1985, only 41 out of 7,000 Apollo contracts expired between 1984 and 1988. This evidence, however, is not sufficient to permit a jury to infer that the rollover practice is unreasonably anticompetitive.

As noted before, evidence that is as consistent with permissible competition as with illegal anticompetitive conduct will not, standing alone, support an inference of violation of the antitrust laws. *Matsushita,* 475 U.S. at 588, 106 S.Ct. at 1356. The parties do not dispute that, as a matter of fact, when a CRS vendor asks an agency to replace its existing contract with a new contract, the agency is free to demand discounts or improved terms. Agents previously under contract, when solicited for renewals, have the opportunity to take advantage of lower prices offered in the area. SystemOne has not shown that the practice of seeking early renewals unreasonably excludes competition or controls prices.

In short, the record bears no evidence of any substance that United's Apollo contracts and marketing practices suppress or destroy competition, control prices, or otherwise constitute an unreasonable restraint on competition. There is no evidence in the record of any exclusionary effect or control of prices from United's conduct. It certainly is not anticompetitive to sue or pursue customers who breach their contracts or to begin offering a renewal before an existing contract expires.

### C. *Sherman Act, § 2 Claims*

■ SystemOne also asserts claims under § 2 of the Sherman Act, contending that United monopolized the CRS market in 12 localities.[14] A finding of monopolization requires proof that: 1) defendant possesses "monopoly power"; and 2) defendant willfully acquired or maintained that power. *United States v. Grinnell Corp.,* 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966).

■ The Sherman Act does not condemn monopoly; it condemns monopolization. As one treatise explains:

> Proof of the existence of monopoly power does not prove the offense of monopolization.... [I]f the firm does not engage in market conduct which has the purpose or effect of protecting, enhancing, or extending its power—then the firm, despite its monopoly power, is not in violation of Section 2; it is a lawful monopoly. A party charging the offense of monopolization must prove both the existence of monopoly power and either that the power was acquired or has been used in ways which go beyond normal honesty and industrial business conduct.

L. Sullivan, *Handbook of the Law of Antitrust,* p. 94 (1977).

---

laws. The United clause, however, does not create such an exclusive dealing arrangement, as stated above.

**13.** SystemOne at times referred to contractual rollover clauses in Apollo contracts. However, at argument on this motion, counsel was unable to direct the Court to anything in the vast array of exhibits presented that demonstrated any anticompetitive effects of these rollover clauses.

**14.** SystemOne's claim based on monopolization of a national market was precluded by the *Austin Travel* decisions. In addition, Counsel for SystemOne stated on the record at the hearing on July 21, 1989 that the travel agencies were no longer asserting a defense based on attempted monopolization.

A monopolization claim under § 2 of the Sherman Act requires a showing of overt, anticompetitive acts. *United States v. U.S. Steel Corp.*, 251 U.S. 417, 451, 40 S.Ct. 293, 299, 64 L.Ed. 343 (1920). Notwithstanding a vendor's market share of 70% to 80%, no § 2 violation is made out where there is no evidence of predatory conduct in acquiring or maintaining market position. *Berkey Photo, Inc. v. Eastman Kodak, Co.*, 603 F.2d 263, 275 (2d Cir.1979), *cert. denied*, 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980). We shall later refer to this settled doctrine in another context.

SystemOne's claims under § 2 of the Sherman Act fail for much the same reason that its § 1 claims failed. In evaluating conduct on which a § 2 monopolization claim is based, the same basic approach taken with a § 1 claim is used, *i.e.*, a rule of reason analysis. Vakerics, *Antitrust Basics*, § 5.06. SystemOne contends that the same conduct complained of under § 1, combined with Apollo's large market share in the 12 markets[15], spells monopolization, giving rise to antitrust consequences. This simply is not so.

SystemOne has failed to present evidence from which a jury could reasonably infer that United engaged in anticompetitive conduct to acquire or maintain its leading share of the CRS market in the 12 cities to which they point. The analysis of United's practices under § 1 of the Sherman Act demonstrates that the practices complained of are not unreasonably restrictive and do not go beyond normal honesty or industrial business conduct. None of the evidence offered by SystemOne shows that United willfully acquired or maintained monopoly power.

Furthermore, the evidence presented by SystemOne would not allow a jury to reasonably infer that United has monopoly power in the market for selling CRS servic-

es to travel agencies. Monopoly power is the power to control prices or exclude competition. *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391, 76 S.Ct. 994, 1005, 100 L.Ed. 1264 (1956). Nothing indicates United has or uses any such power in the specified markets. SystemOne makes no claim that United illegal obtained monopoly power.

SystemOne identifies 12 markets as the relevant geographic markets for its § 2 claim: Cleveland, Denver, Greensboro, Honolulu, Omaha, Portland, Reno, Seattle, Colorado Springs, Huntsville, Provo and Pueblo. In support of its claim that United possesses market power, it presents data indicating only that United's market share in those cities exceeds 60%.

Although market share is treated as strong evidence of market power, it is not dispositive of the question.

Depending on what the undisputed evidence shows concerning a defendant's market share, the structure of a market, and the activities of the defendant and others within the market, a particular record may permit no reasonable inference other than that the defendant lacks monopoly power. Such a conclusion may be reached if the defendant's share is less than 50%, or even somewhat above that figure, *and* the record contains no significant evidence concerning the market structure to show that the defendant's share of that market gives it monopoly power.

*Broadway Delivery Corp. v. United Parcel Service*, 651 F.2d 122, 129 (2d Cir.), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). *Cf., General Communications Eng'r, Inc. v. Motorola Com. & Elec., Inc.*, 421 F.Supp. 274, 287 (N.D.Cal. 1976) (Despite the fact that defendant's market share was 64 to 71%, competition in the market was such that it was impossible

---

**15.** SystemOne alleges that United monopolized the market for the provision of CRS services to travel agents in 12 separate geographic markets.

According to SystemOne's expert, United's market share in 1986 for each was:

| | | | | | |
|---|---|---|---|---|---|
| Cleveland | 66% | Denver | 76% | Greensboro | 64% |
| Honolulu | 74% | Omaha | 78% | Portland | 73% |
| Reno | 63% | Seattle | 64% | Colorado Springs | 59.8% |
| Huntsville | 68% | Provo | 67.3% | Pueblo | 59.8% |

to obtain a monopoly); *see also, Indiana Grocery,* 864 F.2d at 1414.

United's leadership in the 12 cities singled out from among the vast number in which CRSs are used does not by itself evidence a likelihood of competitive injury. In every one of the 12 cities where United leads in market share, all the other vendors of CRSs are represented and market CRSs which are comparable and interchangeable with Apollo. The presence or absence of substitutes to which buyers may turn negates an inference of market power. This suggests that United cannot control price or exclude competition. Other evidence cited by SystemOne as supporting an inference of monopoly power does nothing to bolster the market share evidence or turn it into monopolization.

■ SystemOne points to its expert's statistical regression analysis[16] showing Apollo's "target discounts" are smaller where Apollo has a large market share, as evidence of United's control over price. However, the relation between target discounts, which are in essence marketing goals, and United's purported power over price or supply is obscure at best. Counsel for SystemOne, at argument, acknowledged that target discounts are not the same as price.

■ SystemOne further argues that the contract changes imposed by United in 1985 reflect an ability to control price. According to SystemOne's expert, travel agencies assumed additional liabilities, which under economic analysis amounts to an increase in price, without an appreciable drop in United's market share. A closer look at the record on which this opinion is based, however, suggests the expert's price increase is more apparent than real. The record indicates that United offered discounts to induce travel agencies to sign new contracts. Furthermore, although a change in terms may in effect increase the price, nothing indicates to what extent travel agencies viewed the assumption of contingent liabilities (which would only take effect if the agency opted to breach the contract) as a burden at the inception of the contract. Contracts frequently contain terms that are of great importance to one party, and a matter of indifference to another. The "price" of these terms may be insignificant.

■ Finally, SystemOne's expert suggests that the fact that Apollo's national market share eroded only 0.9% from 1986 to 1988 is evidence of United's market power. He fails to explain, however, why he looks at the erosion of United's national market share, notwithstanding his opinion that local markets constitute the relevant markets. In the disputed markets[17] the following changes in market share took place from 1986 to 1988: Cleveland (+1%); Denver (−9%); Greensboro (−14%); Honolulu (−10%); Omaha (−9%); Portland (−5%); Reno (−4%); Seattle (−1%). Certainly in some of these markets, the erosion of United's market share is significant, and undercuts the claim of market power. SystemOne and the travel agencies have not shown that United engaged in improper conduct, or that it possesses monopoly power, and their claims and defenses under § 2 of the Sherman Act should be dismissed.

### V. *Conclusion*

Notwithstanding the volume of submissions, SystemOne and the travel agencies have failed to demonstrate that a genuine triable issue of fact based on specific, admissible, probative evidence exists on their antitrust claims and defenses. The doctrine of *Montana,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), and *Alpert's Newspaper Delivery,* 876 F.2d 266 (2d Cir. 1989), preclude further consideration of the validity of the Apollo liquidated damages

---

**16.** The expert relies on this regression analysis to support his opinion that United has power over market price, but fails to indicate how closely the data used correlates with the projected relation, *i.e.,* in technical terms he fails to give an R[2] for his regression analysis. A review of the data provided suggests the size of "target discounts" does not bear a close relation with market share.

**17.** Data on United's 1988 market share in Colorado Springs, Huntsville, Provo and Pueblo, is not available. The expert lists Provo as a separate market from Salt Lake City, which is approximately 100 miles away. United's share in Salt Lake City dropped from 67% to 44% between 1986 and 1988.

clause and whether Apollo contracts impose an exclusive dealing arrangement.

United is entitled to summary judgment as a matter of law. Judgment shall be entered in the following numbered cases before the Court in MDL–760 as follows:

1. The complaint of SystemOne against United in 88 Civ. 3912 (MP) is dismissed on the merits, with costs to be taxed by the Clerk;

2. The antitrust defenses of the travel agency defendants in 88 Civ. 3894 (MP) through 88 Civ. 3911 (MP) are dismissed on the merits as insufficient in law;

3. Excepting herefrom the travel agency defendants Braley Travel, Inc., 88 Civ. 3911 (MP), L & R, Inc., 88 Civ. 3900 (MP), and Bryan World Tours, Inc., 88 Civ. 3906 (MP), United shall recover from the travel agency defendants before the Court at this time, *viz*, 88 Civ. 3894, 3895, 3896, 3897, 3898, 3899, 3901, 3902, 3903, 3904, 3905, 3907, 3908, 3909, and 3910 (MP), the damages and amounts agreed on by the parties, as set forth in stipulations filed with the Court on November 15, 1988 and February 2, 1989. The issue of damages in Braley Travel, Inc., 88 Civ. 3911 (MP), L & R, Inc., 88 Civ. 3900 (MP), and Bryan World Tours, Inc., 88 Civ. 3906 (MP), left open for trial in the Court's order of May 8, 1989, shall be tried as provided for in said order.

SO ORDERED.